Lucedale Veneer Co., et al. *v.* Keel.

No. 39607          April 11, 1955          79 So. 2d 232

*O. F. & J. O. Moss,* Lucedale, for appellants.

*W. S. Murphy,* Lucedale, for appellee.

KYLE, J.

This case is before us on appeal by the Lucedale Veneer Company and its insurance carrier from a judgment of the Circuit Court of George County affirming an order of the Workmen's Compensation Commission approving an award of compensation to Charlie B. Keel, the claimant, for the permanent total loss of the use of his right arm.

The record shows that the appellee was an employee of the Lucedale Veneer Company, and that on November 13, 1951, he sustained a serious injury to his right arm while engaged in performing his duties as a block spotter, tonging blocks and putting them in the lathe. Both bones of the forearm were broken, and one of the bones was crushed, and serious damage was done to the soft tissue of the forearm. The appellee was treated for his injuries by Dr. R. L. Benson (now deceased), who performed an immediate surgical operation and set the broken bones, sewed up the open wounds and put the arm in a cast. On May 27, 1952, the arm was examined by Dr. T. H. Blake, an orthopedic surgeon, of Jackson, who

recommended an additional surgical operation, and a drilling operation was performed on the forearm on June 17, 1952. Doctor Blake filed his final report with the insurance carrier on October 22, 1952, and in that report Dr. Blake stated that the results of the surgical operation of June 17 appeared to be satisfactory and the bone appeared to be healed.

Temporary total disability benefit payments were made to the appellee by the insurance carrier for the period beginning November 13, 1951, and ending October 21, 1952, when such payments were suspended. After failing to reach an agreement with the insurance carrier on the amount of permanent disability compensation that he was entitled to receive, the appellee filed an application with the Workmen's Compensation Commission asking that his case be listed as a controverted matter and set for hearing for the purpose of determining the extent of his injuries and the amount of compensation due him under the Workmen's Compensation Act. The cause was thereafter heard by the attorney-referee.

The appellee testified that both bones of the forearm were broken when his arm was caught in the machinery, and that one bone was crushed about two inches above the wrist; that his shoulder was injured and the fleshy part of his forearm was badly torn, and the scar on his forearm after the wounds had healed extended back toward the elbow approximately ten inches. The appellee stated that he had done no work since his injury; that he had tried to get work since the doctor dismissed him on October 21, 1952, and had applied for work at the Frank Bailey Lumber Company and at Buchanan & Fairly Plug Mill, and had been turned down because of his handicap; that he had also applied to R. E. Mc-Leod, a building contractor, and Tom Havard, for work, but he did not get a job. He had asked Henry Pitts, who employed workmen to cut and haul stumps, for a job as a helper, but Pitts turned him down. The appellee

stated that prior to his injury he had done carpentry work, that he had cut and hauled stumps; and that he was a block spotter at the time he was injured; but that he could not do that kind of work now. He could not grip an axe, or a peavey or a hook. Mill owners, building contractors and other employers of labor would not give him a job, because of his handicap.

Frank Bailey testified that he would not hire the appellee because of his handicap.

Dr. L. H. Eubanks testified that he had examined the appellee several times and had made his last examination of the appellee on October 5, 1953, and that in his opinion the appellee's hand was about 60 or 65 percent defective for normal use. He thought the appellee would be totally unable to do the work required of him in his usual occupation. While the appellee's injury was an injury to the arm, that injury accounted for the loss of use of the hand. The doctor stated that the manual labor that the appellee might undertake to do "would have to be something that would not require very much exertion." The damage that he had sustained was damage to the ligaments and muscles and nerves of his arm. He could not close his hand completely. He could not use an axe with any degree of safety. He could not use a metal hook. He could not handle heavy boards or use his arm in lifting timber. In the doctor's opinion appellee's disability was a 60 or 65 percent loss of the use of his hand and forearm. He did not believe there would be any further improvement.

Dr. T. H. Blake, who testified as a witness for the employer and its insurance carrier, stated that the appellee was admitted to the Baptist Hospital at Jackson on June 17, 1952, and that he operated on the appellee's forearm on the following day, making multiple drain holes across the fracture site in an effort to provide an improved blood supply; that he examined the appellee again in August; and that he rendered his final report

to the insurance carrier on October 22, 1952. At that time he estimated that the appellee had a 25 percent disability of the left hand and forearm. It was his opinion that the extremity would improve, and that use of the arm would improve the functioning of the forearm and hand. Dr. Blake stated that he had examined the appellee again on the date of the hearing, and had found that the appellee had full range of movement in the right shoulder and the right elbow. There was some deformity in the lower forearm, but the appellee's condition had definitely improved. He estimated that the appellee had a 25 percent permanent partial disability of the right arm. The doctor thought that the appellee could engage in certain types of work around a sawmill. But the doctor admitted on cross-examination that it would be difficult for him to grip a small object and hold a weight of 150 or 200 pounds. He also stated that the disability which he had mentioned was a functional or medical disability, and that the rating that he mentioned had nothing to do with the job relation.

The appellants also offered in evidence a report of Dr. Theodore J. Bender, Jr., of Mobile, Alabama, who had examined the appellee on November 25, 1952, and who estimated his disability as a 35 percent loss of use of the right arm and hand.

The attorney-referee found that the appellee still suffered serious pain in his right arm and shoulder; that his arm was deformed and badly scarred; and that he had not been able to do heavy work since his injury; and that he had not been able to obtain work that he was able to do. The attorney-referee found that the appellee was 51 years of age and had always earned his living by manual labor, and that the appellee had permanently lost the use of his right arm as a result of his injuries. The attorney-referee entered an order awarding compensation to the appellee in the sum of $25 per week, beginning October 22, 1952, and to continue for a period

of 200 weeks, less a lump sum payment of $500 which had been made to him by the appellant's insurance carrier on December 12, 1952. The attorney-referee also ordered that the appellant and its insurance carrier pay all doctors', hospital and medical bills, as provided in Section 7 of the Workmen's Compensation Act.

A petition for review was filed by the appellant and its insurance carrier, and on April 12, 1954, the commission entered an order affirming the award of the attorney-referee. From that order the appellant and its insurance carrier appealed to the Circuit Court, and the Circuit Court entered a judgment affirming the order of the commission.

The appellants contend that the evidence shows that the appellee sustained only a permanent partial loss of the use of the arm, and that the finding of the attorney-referee and the commission that the appellee had lost the use of his right arm is not supported by the evidence, but is wholly contrary to the evidence, and that the order of the commission should be reversed and the cause remanded to the commission for a proper determination of the proportionate loss of use of the arm for which appellee is entitled to be compensated.

The appellee contends, however, that the evidence was sufficient to show that the injury sustained by him was such as to prevent him from doing the substantial acts required of him in his occupation or employment, and that he was totally disabled within the meaning of the Workmen's Compensation Act. And the appellee cites in support of his contention the case of M. T. Reed Construction Company et al. v. Martin, 215 Miss. 472, 61 So. 2d 300. In that case the Court held that where the testimony of medical witnesses in a workmen's compensation case on the subject of the extent of the injury to an employee carpenter was reasonably reconcilable, although apparently conflicting, and when so reconciled with all the other evidence it lead to the conclusion that

the employee by reason of his injury was prevented from doing the substantial acts required of him as a carpenter and that due to his advanced age and physical condition it appeared improbable that he would be able to pursue any other gainful employment, he was properly allowed an award as for a total disability.

The Court in its opinion in that case said:

"When the whole evidence is considered, it leads inescapably to the conclusion that Martin, by reason of his injury, is prevented from doing the substantial acts required of him as a carpenter. Moreover, due to his advanced age and physical condition, it appears most unlikely that he will be able to pursue any other gainful employment."

And the Court also quoted with approval the following statement from Mutual Benefit Health & Accident Association v. Mathis, 169 Miss. 187, 142 So. 494: " '* * * in order for one to be totally disabled within the meaning of a health or accident insurance policy, it is not necessary that he be wholly incapacitated to perform any duty incident to his usual employment or business, but, if the insured is prevented by his injury or illness from doing the substantial acts required of him in his business, or if his physical condition is such that, in order to effect a cure or prolongation of life, common care and prudence require that he cease all work, he is totally disabled within the meaning of such policies.' "

We think the rule stated and applied in the Reed Construction Company case, supra, is applicable to the facts in this case. The medical testimony on the question as to the degree of disability resulting to the appellee from the injury to his right hand and arm was conflicting, and neither doctor estimated the percentage loss of the use of the right hand and arm at 100 percent. But Dr. Eubanks stated that in his opinion the appellee would be totally unable to do the work required of him in his usual occupation; that the manual labor that the

appellee might undertake to do "would have to be something that would not require much exertion," and that he did not believe there would be any further improvement. The doctor's estimate of the percentage of disability of loss of use of the arm and hand was an estimate of medical disability. The question which the attorney-referee and the commission had to decide was whether the loss of the use of the arm was a total loss of use or a partial loss of use. And that question had to be determined from the evidence as a whole, including the testimony of the appellee, who testified that he had been unable to work and had been unable to get work since October 22, 1952. The testimony of the appellee was that he was prevented by his injury from doing the substantial acts required of him on jobs that he was accustomed to work at; and in this the appellee was supported by the testimony of Doctor Eubanks. The attorney-referee had this evidence before him. He had an opportunity to see and examine the appellee's injured arm and hand. The attorney-referee and the commission found that the appellee had suffered a total loss of the use of the arm. The appellee was not awarded compensation for permanent total disability, but compensation for permanent loss of use of the arm. We are unable to say that their decision is manifestly wrong or is contrary to the overwhelming weight of the evidence.

The judgment of the lower court is therefore affirmed, and the cause is remanded.

Affirmed and remanded.

*Roberds P. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.