MODERN LAUNDRY, INC., et al. *v.* WILLIAMS.

No. 39639          May 2, 1955          79 So. 2d 829

*Welch & Gibbes,* Laurel, for appellants.

*H. C. Moynihan,* Laurel, for appellee.

Kyle, J.

This case is before us on appeal by the Modern Laundry, Incorporated, and its insurance carrier from a judgment of the Circuit Court of the Second Judicial District of Jones County affirming an order of the Workmen's Compensation Commission awarding compensation to James A. Williams for the loss of the use of his left arm.

The record shows that the appellee was employed by the Modern Laundry, Incorporated, as a dry cleaner, and that on August 26, 1952, while the appellee was engaged in operating a washing machine, which was propelled by steam, his left hand and arm were caught in the rollers of the machine and were badly injured. The flesh was

torn from the upper and lower parts of the arm. The elbow was crushed and the bones of the elbow were fractured. There were also fractures of the bones of the hand. The appellee was taken to the hospital immediately and his injuries were treated and the necessary surgical operations were performed by Dr. E. E. Ellis. The appellee remained in the hospital nine days and was treated by Doctor Ellis for a period of several months. He was also examined and treated by Dr. T. S. Eddleman, an orthopedic surgeon of Jackson, and on October 5, 1953, he was examined by Dr. Francis R. Conn, an orthopedic surgeon of Hattiesburg.

Doctor Eddleman made progress reports to the insurance carrier from time to time for a period of approximately twelve months after the date of the injury, and the appellee was paid compensation for temporary total disability for the period from August 27, 1952, to August 18, 1953. Doctor Eddleman made his final report to the insurance carrier on August 28, 1953, and in that report Doctor Eddleman stated that in his opinion "the patient has reached maximum improvement of the severe injury to the left arm, and has a 50 per cent permanent disability in the use of the left arm, as the result of his injury." Doctor Eddleman stated that the patient had complete extension of all his fingers and that his wrist could be dorsiflexed normally, and there was almost complete flexion of his fingers. He stated that the patient had motion in the left elbow from 25 degrees flexion to 115 extension.

Doctor Conn made a second examination of the appellee's arm on January 15, 1954, which was only a few days before the hearing before the attorney-referee; and Doctor Conn stated in his report that there was "some deformity in the region of the elbow, with several well healed scars around the lower third of the upper arm and around the elbow joint itself." There was atrophy, "and this atrophy is palpable," at the sight of origin of the flexor muscles of the wrist and fingers. There was

atrophy, "and this atrophy is palpable," at the sight of origin of the flexor muscles of the wrist and fingers. There was approximately 50 per cent restriction of pronation and supination of the left forearm, and also 50 per cent dorsiflexion and palmar flexion at the wrist joint, and a lack of flexion at all of the smaller joints of the left hand. The lack of motion in the left arm started at the elbow and included the wrist and the smaller joints of the hand. Upon the basis of the facts stated, Doctor Conn estimated the appellee's disability as a 60 per cent permanent partial disability of the arm.

From the appellee's own testimony, it appeared that he could raise or lower his wrist to a limited extent only. His fingers were stiff. There was a severe limitation of movement in his wrist and in his elbow and in his ability to rotate the arm from side to side. He could flex his arm to a limited extent only. He could not touch the fingers to the palm of his hand. He could not reach down and pick up an object on the ground with his left hand, without squatting down. The appellee stated for the benefit of the record that he was lefthanded. He stated that he was no longer able to do the work required of him as a dry cleaner because of the loss of the use of the left arm. He stated that he had reported for work at the plant during the latter part of August 1953 but the manager told him that he could not use him because of the condition of his arm. He stated that he had tried to get work at the American Dry Cleaners and the White Way Dry Cleaners, in the City of Laurel, but neither of them would hire him because of the condition of his arm.

The appellee stated that dry cleaning was a business that required particular training and experience, and that he had about nine years experience in the dry cleaning business. Heavy work was required of him in the performance of his duties as a dry cleaner, and he was unable to do that kind of work because of the injury to his arm. He stated that he was 34 years of age and that he lived on a farm near the Town of Heidelberg; that he

quit school in 1936, and had done public work as a common laborer prior to the time that he went to work for the Modern Laundry in 1940; that he had worked for the laundry until he went into the military service in March 1942; and that he was in the military service for a period of approximately four years. On cross-examination he stated that he was a member of a motorized field artillery unit and served in the Western Pacific for a period of more than two years. He was a truck driver and hauled supplies in New Guinea and the Philippines. He was discharged from the military service in December 1945 and returned to his job at the Modern Laundry in January 1946.

B. E. Denham, who operated the American Dry Cleaners' plant in Laurel, testified that the appellee had applied to him for work. Denham stated that he did not have a vacancy at that time, but he also stated that he would not have hired the appellee anyway because of his disability. W. K. Harrell, the manager of the Modern Laundry, was called to testify as a witness for the claimant and was asked why he would not reemploy the claimant. Harrell stated that he had been in the laundry and dry cleaning business for 31 years; and that he did not give the claimant further employment because he came to the conclusion that the claimant could not do the work that the job called for because of his injured arm.

The attorney-referee reviewed the testimony and reached the conclusion that the claimant was entitled to compensation for a 60 per cent loss of use of the left arm; and the attorney-referee entered an order awarding compensation benefits at the rate of $25 per week for a period of 120 weeks, less the amount already paid therefor. The claimant filed a petition for a review by the full commission, and upon a review of the record the full commission found that the claimant had sustained a total permanent loss of use of the arm; and the commission amended the award of the attorney-referee and ordered that the employer and its insurance carrier pay to the

claimant compensation benefits at the rate of $25 per week for a period of 200 weeks for the loss of the use of the arm, less the amount already paid therefor for permanent disability.

The circuit court affirmed the order of the commission.

The appellants argue only two points as ground for reversal on this appeal: (1) That there is no evidence in the record to support the award of the full commission allowing compensation benefits for 100 per cent loss of use of the arm; and (2) that the facts disclosed by the record do not warrant an award in excess of 60 per cent of 200 weeks.

In support of their first contention the appellants say that the only estimates in the record of the degree of disability that has resulted to the appellee from the injury to his arm are those of Doctor Eddleman and Doctor Conn; and that one of these physicians estimated the disability as a 50 per cent disability and the other a 60 per cent disability; and that the amended award of the full commission is not substantiated by the evidence. In support of their second contention the appellants say that, under the rule laid down in Nowlin v. Mississippi Chemical Co. et al., 219 Miss. 873, 70 So. 2d 49, where there is an injury to a member of the body which is specifically provided for under the Workmen's Compensation Act, the claimant is only entitled to the percentage of the total compensation allowed for the loss of the member which the evidence shows is the percentage of disability to that member.

But we think that this case is controlled by the rule laid down in M. T. Reed Construction Company et al. v. Martin, 215 Miss. 472, 61 So. 2d 300, and reaffirmed by us in Lucedale Veneer Company et al. v. Keel, No. 39,607, rendered April 11, 1955, and not yet reported. The estimates of the two doctors as to the extent of the appellee's loss of use of the left arm were mere estimates of medical disability. The question which the commis-

sion had to decide was whether the appellee's loss of use of the arm was a total loss of use or a partial loss of use of the arm for wage earning purposes; and that question had to be determined from the evidence as a whole, including the testimony of the appellee and the other witnesses who testified during the hearing concerning the appellee's ability to use the arm for wage earning purposes after the injury. The reports of the two doctors indicate very clearly the crippled condition of the appellee's arm a year after the injury. It was the duty of the commission to determine from those reports and the other evidence as a whole whether the loss of use of the arm was a total or partial loss of use.

██ █ Doctor Conn's report showed that there was a deformity in the region of the elbow. The loss of motion in the left arm started at the elbow and included the wrist and the smaller joints of the hand. The appellee testified that, by reason of his injury, he was prevented from doing the substantial acts required of him as a dry cleaner. He could no longer perform the duties incident to his usual employment. The employer for whom he had worked testified that he would not re-hire him for the reason that he did not think that he could do the work that the job called for because of the crippled condition of his arm. Two other dry cleaning establishments in the City of Laurel turned him down because of the crippled condition of his arm. The appellee had been a truck driver while he was in the military service. He had worked as a common laborer on road construction projects when he was still in his teens. But, with the crippled condition of his arm, he could not expect to obtain employment as a truck driver or as a common laborer. The commission had this evidence before them when they reviewed the appellee's claim. The appellee was not awarded compensation for permanent total disability. He was only awarded compensation for the permanent loss of use of the arm. ██ █ And after a careful review of the testimony we think that it cannot be

said that the finding of the commission was **manifestly wrong.**

The judgment of the lower court is therefore affirmed. Affirmed and remanded.

*Roberds, P. J.,* and *Hall, Lee,* and *Holmes, JJ.,* concur.