McManus *v.* Southern United Ice Company, et al.

No. 42259      March 26, 1962      138 So. 2d 899

*Satterfield, Shell, Williams & Buford, Cary, Bufkin,* Jackson, for appellant.

*Henley, Jones & Henley,* Jackson, for appellees.

JONES, J.

The only question involved in this case is whether lay testimony as opposed to medical evidence where only

the question of the degree of disability is concerned is substantial evidence that will support the finding of the Commission.

It is conceded that in the summer of 1957, the appellant, while employed by appellee, received an injury in the course of his employment. The evidence shows that while he was handling a 300 pound block of ice "something popped" in his left arm, and he was nauseated. He saw a local physician, who sent him to the firm of Dr. T. H. Blake at Jackson, where he was found to have suffered a rupture of the long-head of the biceps in the left arm. The doctors thought an operation might remedy the situation, but after some delay and when the appellant finally seemed to agree to the operation, it was decided that on account of his age and the time elapsed since the accident, an operation would not be warranted. He was allowed and paid for 26 weeks, 4 days temporary total disability, and 40 weeks permanent partial disability for twenty percent loss of the use of the arm.

After these payments had been made and under date of April 7, 1959, appellant filed his petition with the Workmen's Compensation Commission asking that the cause be reopened under all of the application sections of the compensation act to determine the additional benefits, if any, to which the claimant might be entitled because of the injury hereinbefore mentioned. A hearing was thereafter held and the Commission adjudicated that the claimant reached the maximum medical recovery on January 15, 1958, but that he suffered residual permanent disability to the extent of one hundred percent loss of use of his left arm, and directed the payment of compensation accordingly, giving credit for that already paid.

On appeal to the circuit court, the order of the Commission was reversed on the ground that there was no substantial evidence to support same.

At the hearing, the claimant, his wife, his son, and a neighbor all testified for the claimant. The claimant testified, and all the evidence showed, that he had only finished the fourth grade of school and that his work experience had been in farming and the unskilled labor he performed for appellee. He testified that since the accident he had not been able to pick up any. thing very heavy; that he could not reach down very quickly; that his arm hurt him all the time and stayed asleep all the time; he could not completely close his fist, and when he tried it hurt him very badly; that he could not hold a grip for any period of time without it turning loose; that he had pains in his shoulder, and there was a depression in his upper arm which had been there ever since the accident; that he could not raise his arm very high and when he tried to raise his arm it felt like something pulling loose; that he had tried to work but the pain would not permit him to work; that the pain started in the upper part of the left arm and went in a semi-circle through his shoulder and into his chest; that he tried to help his brother tie turnips but after a few minutes he could not get his fingers together; that sometime it felt like somebody was sticking a knife in him; that he had to take aspirin every night and took about 100 aspirin a week seeking to relieve the pain; that sometimes he tried to mow the lawn, but would have to pull or push the mower with one hand; that he had not earned a penny since the injury but was dependent upon his wife; that he was 63 years of age at the time of the first hearing on May 7, 1959; that prior to his injury he had a garden but since he got his arm hurt he had no garden; that he would drive his wife to work in the car; that his arm hurt him just as much as it did when he was first injured; that even when he tried to sweep his arm hurt him so he could not sleep.

His wife testified that her husband was not able to work and her income was all they had; that he had always been a hard working man but had not been able to work since his arm was injured; that when he tried to do anything he got so nauseated he could not sleep or eat; that if he tried to do anything, even pick up a broom and sweep the floor, he would have the pain; that lots of times he would carry his left arm or hand in the other hand; that in driving the car if the brakes were up and he started to reach for them his arm drops back and he just flinches; that he could not grip your hand for but a second, and as he holds it, you could feel it beginning to break loose. She also testified about the aspirin; that the pain runs along in his arm up into his shoulder; that the doctors had put him on a pulley reaching to pull a rope up and down; that he did that for a while but it did not do him any good, in fact, every time he would take the treatment he would be worse from taking it—it would make him nauseated every time; sometimes for two or three days at a time he would not eat one good meal; that he did not sleep any when he tried to use his arm; that he tried to mow the lawn sometime but used only one arm; that he worked a garden until he got his arm hurt but he has not had one since; that he would undertake to mow the lawn and sweep and wash dishes for her, but the pain kept him from doing so, and also kept him from visiting his neighbors, and that he had lost his desire to go fishing.

Mrs. Jaunita Berry was a neighbor who lived right behind the claimant's home. She had known Mr. Mc-Manus all her life and she was 33 years old; before the injury she had never seen Mr. McManus around his home during the day, but since the injury he was at home every day; she saw him every day and visited practically every day; since the injury he had not been able to work; that she had seen him out mowing the

lawn and he just had to pull the mower with his right hand; that she had seen him trying to paint some screens on his house, but he was not able to do the work successfully; that he did not seem to have any strength in his arm, as she had noticed it in seeing him trying to lift her little girl. She knew about his taking the aspirin. Mr. McManus was not a man who did not work; she had ridden in the car with him and when he desired to use his brake on the left side, he would have to use his right arm; that he took down two screens to paint but was not able to paint them; he liked to hunt but only went squirrel hunting twice in the fall.

His son corroborated the fact that his father had worked all his life; that when he tried to work and use his arm, he could not sleep at night, and that his mother had to make the living for them; that his father held his arm in one position and while he was sitting around he was rubbing his arm and fingers; that his father said he did that because it was paining him and felt like it was asleep; that he had had his father catch his hand and squeeze it and that it felt like a six-year old child; it was shown that the claimant had undertaken to help his son-in-law build a fence but had to quit because of the pain.

For the appellee, Dr. Blake testified as to their finding. He placed the disability at twenty percent of the loss of the use of the arm. He testified he was unable to explain the pain but that he could not deny the pain existed. Dr. Blake was the only doctor who testified, and, as stated, he was of the opinion that the disability was only twenty percent and there was nothing to indicate his inability to perform some work.

On March 16, 1960, to which date the hearing had been recessed, the claimant and his wife were recalled and their testimony on that date was the same as at the previous hearing. The wife did say that she had noticed when he was taking her to work and the car

door would open or would not fasten and he reached unexpectedly with his left arm to catch it, that lots of times he would have to stop "dead still" in the street when he pulled the door to because it hurt him so he would turn "white as a shirt"; that she had seen that plenty of times; that in undertaking to put up some fence at his daughter's and son-in-law's home, they would hand him some staples and he would take one or two with his hand and then he would get to where he could not pick them up.

On this evidence, the Commission allowed the one hundred percent disability for loss of use of the arm, from which an appeal was taken and the order reversed by the circuit court.

We are not here concerned with House Bill 62, Laws of 1960, amending Section 6998-02, Code of 1942, and particularly subsection 9 thereof, since the rights of the claimant arose prior to the effective date of that Act.

In Section 45 of Dunn's work on Mississippi Workmen's Compensation, it is stated:

"The question in these cases is the degree of loss of use of the member for wage earning purposes, and this issue is for determination from the evidence as a whole, including medical estimates relating either to the functional or industrial loss and the testimony of the claimant and other lay witnesses as to the effect of the injury upon the employee's ability to perform the duties required to him in his usual employment. In this connection, a partial loss of functional use may result in total disability, and to reach such a result it is not necessary that the employee be wholly incapacitated to perform any duty incident to his usual employment or business, but, if he is prevented by his injury from doing the substantial acts required of him in his usual occupation, or if his resulting condition is such that common care and prudence require that he cease work, he is totally disabled within the meaning of the statute."

In the case of Modern Laundry, Inc. v. Williams; 224 Miss. 174, 79 So. 2d 829, this Court held:

"But we think that this case is controlled by the rule laid down in M. T. Reed Construction Company v. Martin, 215 Miss. 472, 61 So. 2d 300, 63 So. 2d 528, and reaffirmed by us in Lucedale Veneer Company v. Keel, Miss., 79 So. 2d 233. The estimates of the two doctors as to the extent of the appellee's loss of use of the left arm were mere estimates of medical disability. The question which the commission had to decide was whether the appellee's loss of use of the arm was a total loss of use or a partial loss of use of the arm for wage earning purposes; and that question had to be determined from the evidence as a whole, including the testimony of the appellee and the other witnesses who testified during the hearing concerning the appellee's ability to use the arm for wage earning purposes after the injury. The reports of the two doctors indicate very clearly the crippled condition of the appellee's arm a year after the injury. It was the duty of the commission to determine from those reports and the other evidence as a whole whether the loss of use of the arm was a total or partial loss of use."

While this case is not as strong as other cases in which this rule has been announced, this Court is of the opinion that the evidence of the lay witnesses, including that of the claimant himself, constituted substantial evidence supporting the Commission's findings, and for that reason the judgment of the lower court was in error. The case is reversed, the order of the Workmen's Compensation Commission is reinstated, and the case remanded.

Reversed and remanded.

*McGehee, C. J.,* and *Kyle, Gillespie,* and *McElroy, JJ.,* concur.