586 So.2d 163 (1991)
Herman McGOWAN
v.
ORLEANS FURNITURE, INC. and United States Fidelity and Guaranty Company.
No. 90-CC-0274.
Supreme Court of Mississippi.
September 4, 1991.
*164 S. Christopher Farris, Farris & Farris, Hattiesburg, for appellant.
Jolly W. Matthews, III, Ingram, Matthews & Stroud, Hattiesburg, for appellees.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Herman McGowan was employed at Orleans Furniture. He was not assigned to any one particular job but filled in wherever someone was needed. He earned an average weekly wage of $158.00. On September 16, 1985, he was cutting lumber when a pallet fell over and hit him on the leg, specifically his left ankle.[1] He saw Dr. Campbell, the company doctor, about an hour later. Dr. Campbell took x-rays and told McGowan that his ankle was just bruised. The doctor put a cast on the leg and sent McGowan home.
Later that day, the swelling had gotten so bad that McGowan returned to see Dr. Campbell. Dr. Campbell cut the cast off and drained some of the bruised blood from the leg. Dr. Campbell then sent McGowan to the hospital for therapy since the ankle was getting worse. Eventually, Dr. Campbell sent McGowan to Dr. Conn, an orthopedic surgeon.
Dr. Conn first saw McGowan on November 18, 1985. On that date, Dr. Conn examined three views of the ankle and determined that McGowan had a lateral, collateral ligament strain of his left ankle. He placed McGowan in a padded walking fiberglass cast.
Dr. Conn continued to treat McGowan. He saw McGowan on twenty-five occasions. On January 26, 1986, McGowan underwent a lateral ligament reconstruction to the left ankle. Dr. Conn performed the surgery. After the surgery, McGowan was again placed in a cast but that was eventually replaced by a short leg brace and then a low profile ankle support brace.
On January 2, 1987, a second surgery was performed by Dr. Conn. McGowan had developed recurrent and persistent pain in the posterior lateral aspect of his ankle. This surgery consisted of removing scar tissue from the sensory nerve or the sural nerve behind his left ankle. Following that surgery, McGowan was eventually allowed to ambulate and put weight on his leg while wearing a low profile ankle brace.
In July of 1987, McGowan continued to have some pain and some swelling. In August, McGowan's laboratory tests were fine, but he continued to have some pain. At that time, Dr. Conn released McGowan to return to work if feasible in spite of the pain and swelling.
Dr. Conn again saw McGowan in November of 1987. McGowan was still experiencing pain and his ankle was swollen. McGowan had not returned to work at that time. Although Dr. Conn had released McGowan to return to work in August of 1987, he believed that McGowan did not reach maximum medical recovery until he was finally released on July 8, 1988, since McGowan persisted with such a degree of impairment following the August release.
McGowan was discharged in July of 1988 but was last seen by Dr. Conn on October 14, 1988. At that time, McGowan was still *165 experiencing pain in the posterior lateral aspect of his ankle.
Dr. Conn expressed the opinion that McGowan has a 40% permanent partial impairment of his left leg as a result of the injury. He said that McGowan would have to have clinical evaluation periodically, would have to continue using a low profile ankle brace, and would have to continue taking pain medication as required, at least in the foreseeable future. Dr. Conn said that McGowan would be limited in activities that he could do such as standing for long periods of time, climbing ladders and stairs, and carrying heavy loads, i.e., anything weighing over twenty to twenty-five pounds.
McGowan filed a Petition to Controvert on July 29, 1986. A hearing was held before Administrative Judge Van C. Temple on December 19, 1988. Judge Temple entered an Order on January 19, 1989. He found that McGowan had reached maximum medical improvement on July 8, 1988, and that he suffered a 40% loss of use of his lower left extremity from a medical point of view but a 100% industrial loss of use of his lower left extremity for wage-earning purposes considering the evidence as a whole.
Orleans Furniture and its carrier filed a Petition for Appeal and Review before the Full Commission on January 26, 1989. The Commission heard the arguments and on September 25, 1989, entered an Order. The Commission found that McGowan reached maximum medical recovery on August 20, 1987, and that he suffered a 40% industrial loss of use of his left leg. Orleans Furniture and its carrier were ordered to pay McGowan $105.34 per week for the period beginning September 16, 1985, and ending August 20, 1987, for temporary total disability benefits; $105.34 per week beginning August 21, 1987, and continuing for a period not to exceed 70 weeks for permanent partial disability benefits; expenses for medical services and supplies; and additional compensation for reasonable vocational rehabilitation services.
McGowan filed a Notice of Appeal to the Circuit Court of Marion County on October 5, 1989. He appealed the Commission's findings as to the date he reached maximum medical recovery and the percentage assigned as industrial loss.
On February 26, 1990, the court entered an Order reversing that part of the Commission's Order which held that the date of maximum medical recovery was August 20, 1987. After reviewing the evidence, the court was of the opinion that the evidence supported July 8, 1988, as the date when maximum medical recovery was reached.
From that judgment, McGowan appeals the findings of both the Commission and the Circuit Court that he suffered only a 40% industrial loss of use of his left leg. Orleans Furniture and its carrier also appeal from the judgment entered by the Circuit Court assigning as error the court's ruling that the date of maximum medical recovery was July 8, 1988.

STANDARD OF REVIEW
We recently provided a lengthy discussion of our standard of review in workers' compensation cases in Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243 (Miss. 1991). In short, our review is limited.
The Workers' Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding. See, Dunn, Mississippi Workers' Compensation § 284 (3d Ed. 1982)... . [T]his Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.
Smith v. Container General Corp., 559 So.2d 1019, 1021 (Miss. 1990) [quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988)]. When conflicting evidence has been presented, we will not make a determination of the preponderance of the evidence, "the assumption being that the Commission, as the trier of fact, has previously determined which evidence is credible, has weight, and which is not." Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss. 1990).

*166 A. INDUSTRIAL LOSS OF USE
The Commission found that McGowan did not prove an industrial loss of use of the left leg beyond the 40% impairment rating assigned by Dr. Conn. The Commission based its decision on the fact that McGowan admitted that he could still operate the tools used in cabinet-making, i.e., a table saw and a sander, that McGowan did not present any evidence showing that he was unable to do the substantial acts required of him in his usual occupation, and that McGowan did not present evidence showing that he is unable to pursue gainful employment. McGowan appeals this decision.
We explained the difference between a medical disability and an industrial disability in Robinson v. Packard Electric Division, General Motors Corp., 523 So.2d 329 (Miss. 1988). "Generally, `medical' disability is the equivalent of functional disability and relates to actual physical impairment. `Industrial' disability is the functional or medical disability as it affects the claimant's ability to perform the duties of employment." Robinson, 523 So.2d at 331.
Vardaman Dunn, a noted Mississippi authority on workers' compensation, has this to say with regard to the difference:
The question in these cases is the degree of loss of use of the member for wage earning purposes, and this issue is for determination from the evidence as a whole, including medical estimates related either to the functional or industrial loss and the testimony of the claimant and other lay witnesses as to the effect of the injury upon the employee's ability to perform the duties required of him in his usual employment. In this connection, a partial loss of functional use may result in total disability, and to reach this result it is not necessary that the employee be wholly incapacitated to perform any duty incident to his usual employment or business; but if he is prevented by his injury from doing the substantial acts required of him in his usual occupation, or if his resulting condition is such that common care and prudence require that he cease work, he is totally disabled within the meaning of the statute.
* * * * * *
Indeed, more estimates of the medical or functional loss may have little value when compared with lay testimony by the claimant that he suffers pain when attempting use of the member and that he has tried to work and is unable to perform the usual duties of his customary employment, and this is especially true when such testimony is corroborated by persons who have observed the claimant's attempt to work or who have refused to employ the claimant because of his apparent affliction. (footnotes omitted)
Piggly Wiggly v. Houston, 464 So.2d 510, 512 (Miss. 1985) [quoting Dunn, Mississippi Workmen's Compensation 3rd Ed. § 86, p. 102, 103].
In Robinson, supra, the appellant argued that medical proof establishing the degree of functional disability was proof ipso facto of the degree of industrial disability. The Court said that the appellant's argument "flies in the face of the principle" and that to show industrial disability, the claimant bears the burden of proving not only medical impairment but also a loss of wage-earning capacity as a result of the medical impairment. Robinson, 523 So.2d at 331.
We have applied an industrial loss rate to the loss of use of a scheduled member in several cases. For example, in Tyler v. Oden Construction Co., 241 Miss. 270, 130 So.2d 552 (1961), we held that the claimant suffered a 100% loss of use of his leg and ankle although he was given a disability rating of approximately 50%. Citing Tyler as support for entering a judgment for 100% disability when a scheduled member is injured, the Court in Richey v. City of Tupelo, 361 So.2d 995 (Miss. 1978), held that the claimant lost 100% use of his arm for wage-earning purposes although the Commission found that the claimant had suffered a 50% disability.
McManus v. Southern United Ice Co., 243 Miss. 576, 138 So.2d 899 (1962), involved an on-the-job injury to the arm of *167 the claimant. Only one doctor testified and he said that the claimant had suffered a 20% disability and there was nothing which indicated that he could not work. On the other hand, the claimant and his family testified that he was unable to work because of the pain in his arm. The Commission found that the claimant had suffered a 100% loss of use of his arm. This Court affirmed that decision saying that although the evidence was not as strong as it was in other cases, the evidence was substantial and supported the findings of the Commission.
In Modern Laundry, Inc. v. Williams, 224 Miss. 174, 79 So.2d 829 (1955), the claimant injured his hand and arm while performing his duties as a dry cleaner. This Court found that the claimant had suffered a 100% loss of use of his arm because he was unable to perform the duties involved in his usual employment. Such a situation, the Court said, is controlled
by the rule laid down in M.T. Reed Construction Company et al. v. Martin, 215 Miss. 472, 61 So.2d 300 [(1952)], and reaffirmed by us in Lucedale Veneer Company et al. v. Keel, No. 39, 607 [223 Miss. 821, 79 So.2d 233], rendered April 11, 1955, and not yet reported. The estimates of the two doctors as to the extent of the appellee's loss of use of the left arm were mere estimates of medical disability. The question which the commission had to decide was whether the appellee's loss of use of the arm was a total loss of use or a partial loss of use of the arm for wage earning purposes; and that question had to be determined from the evidence as a whole, including the testimony of the appellee and the other witnesses who testified during the hearing concerning the appellee's ability to use the arm for wage earning purposes after the injury. The reports of the two doctors indicate very clearly the crippled condition of the appellee's arm a year after the injury. It was the duty of the commission to determine from those reports and the other evidence as a whole whether the loss of use of the arm was a total or partial loss of use.
Modern Laundry, 224 Miss. at 179-180, 79 So.2d at 832.
The Commission is not confined to medical testimony in determining the percentage of loss to be assigned to an injury. Malone & Hyde of Tupelo, Inc. v. Kent, 250 Miss. 879, 168 So.2d 526 (1964). Lay testimony may be considered to supplement medical testimony but "[t]he probative value of any witness' testimony is for the fact-finder to determine." R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1021 (Miss. 1990).
Factors which this Court has considered in determining loss of wage earning capacity include the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances. Malone & Hyde of Tupelo, 250 Miss. at 882, 168 So.2d at 527. In other words, the determination should be made only after considering the evidence as a whole. Piggly Wiggly, 464 So.2d at 512.
Whether McGowan suffered a 100% industrial loss of use is a question of fact to be determined from the evidence as a whole. The only testimony before the Commission and this Court is that of McGowan and Dr. Conn.
McGowan is a forty-three year old man who dropped out of school in the tenth grade to help support his family. From that time until the time of his injury, he worked in construction and did carpentry work. He had also delivered furniture at one point.
At Orleans Furniture, McGowan did not perform any one particular job. He was moved around from job to job as needed. Some of the jobs that he performed included working in the sanding department, cutting out chest-of-drawer tops, and working in the mill. McGowan said that after his injury, he could not do any jobs which required him to stand but he could sand edges and use a table saw. He said that he could not do certain activities which he was able to do before his injury such as playing basketball and doing carpentry work.
*168 McGowan said that he continues to have problems with his leg every day. The leg continues to have some swelling and to cause pain. After he stands on it for several hours, he suffers sharp pain which causes headaches.
Dr. Conn testified that McGowan has a 40% permanent partial impairment of his left leg. He said that McGowan would be limited in activities such as standing for long periods, climbing ladders and stairs, and carrying heavy loads. However, McGowan could work in sedentary type positions where he could sit to do the work.
The whole of this evidence indicates that McGowan is certainly limited in the jobs he will be able to perform in the future. The jobs which he has performed in the past, such as construction and carpentry work and delivering furniture, will no longer be alternatives. McGowan will be forced to look for jobs that allow him to sit down and with his limited education and training, such jobs will be difficult to find.
McGowan has not attempted to return to work nor does he offer testimony from anyone else as to the effect his injury has had on his ability to perform his work. McGowan says that he can still operate a sander and a table saw. However, operation of those tools is not proof that he can perform the substantial acts required of him in the performance of his job. McGowan was employed by Orleans Furniture to fill in wherever needed. In that capacity, McGowan was required to do more than operate a sander and table saw.
The evidence as a whole indicates that the finding of the Commission that McGowan suffered only a 40% industrial loss of his leg was not supported by substantial evidence. The testimony of Dr. Conn together with McGowan's testimony supports a finding of 100% industrial loss of use of his left leg, a scheduled member. Since the holding of the Commission on this issue is clearly erroneous and is contrary to the overwhelming weight of the evidence, we reverse the findings of both the Commission and the Circuit Court and hold that McGowan has suffered a 100% industrial loss of use of his left leg. He may recover for the maximum number of weeks, one hundred and seventy-five, allowed by the schedule. See Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243 (Miss. 1991).

B. DATE OF MAXIMUM MEDICAL RECOVERY
The Commission, after an examination of the evidence, found that McGowan had reached maximum medical recovery on August 20, 1987. Believing that the evidence did not support that finding, the Circuit Court reinstated July 8, 1988 as the date of maximum medical recovery. Orleans Furniture and its carrier appeal that finding.
Whether and when a claimant has reached maximum medical recovery are questions which are to be determined by the Commission based on testimony from both lay and medical witnesses. Burnley Shirt Corp. v. Simmons, 204 So.2d 451, 453 (Miss. 1967).
The issue may be a purely medical one. Thus, there may be medical evidence that the period of recuperation is not yet over, that further healing and strengthening may be anticipated, and that it is still too early to appraise claimant's permanent disability. Conversely, there may be medical testimony that the claimant has recovered as much as he ever will, and that any lingering disability is permanent. The fact that some treatment is necessary, such as physical therapy or drugs, does not necessarily rule out a finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition. But, if treatment was given in the hope of improving the condition, the later discovery that no improvement resulted does not bar a finding that the healing period persisted throughout the process of treatment. The persistence of pain may not of itself prevent a finding that the healing period is over, even if the intensity of the pain fluctuates from time to time, provided again that the underlying condition is stable. (footnotes omitted)
*169 2 A. Larson, The Law of Workmen's Compensation § 57.12(c), at 10-22 to 10-29 (1989).
In Azwell v. Franklin Associates, 374 So.2d 766 (Miss. 1979), two hearings were held, one on August 20, 1974, and one on October 27, 1976, to consider the claim of the claimant. The result of the hearing was that the claimant had not yet reached maximum medical recovery. In the second hearing, the administrative judge asked the claimant's doctor if and when the claimant had reached maximum medical recovery. The doctor responded that he would put the date at July 17, 1974, since there had not been any significant change in the claimant's condition after that date.
This Court found that maximum medical recovery had not yet been reached in spite of the doctor's testimony. The basis of the Court's decision included the fact that the administrative judge, in the hearing held on August 20, 1974, a later date than July 17th, found that maximum medical recovery had not been reached, that medical reports from the claimant's doctor indicated that the claimant was still undergoing treatment and would possibly have to undergo a spine fusion, and that the claimant himself testified "that his ability to perform his activities was continuously decreasing and his income was decreasing proportionately." Azwell, 374 So.2d at 771.
A claimant may continue to be temporarily disabled even though he has received maximum recovery from conservative care if his condition can be improved by surgery.
[I]f a claimant sustains a compensable injury and receives medical treatment until discharged as cured, the testimony of the doctor who discharged the claimant may not be sufficient to furnish an effective conflict with that of another doctor who examined the claimant at a later date and who gives it as his opinion that the patient remains in a disability status, especially if the claimant also testifies that he continues to be disabled from the injury.
Dunn, supra, § 279, at 350-351.
Dr. Conn testified as to the date McGowan reached maximum medical recovery. The conflict in dates as to when maximum medical recovery was reached is a result of Dr. Conn's change of mind.
Dr. Conn released McGowan to return to work on August 27, 1987. On January 2, 1988, Dr. Conn indicated in a report to the United States Fidelity and Guaranty Company that McGowan had reached maximum medical recovery and that he could return to work. However, in his deposition, Dr. Conn said he felt that McGowan had not reached maximum medical recovery until he was finally released on July 8, 1988. He changed his mind after he saw that McGowan persisted with such a degree of impairment following the August release.
Dr. Conn's treatment of McGowan from August of 1987 until the present differed only in the application of compression hosiery and conservative care of pain medication. He said that the continued care was given in the hope that there would be some change in McGowan's condition. In fact, Dr. Conn said that when he saw McGowan in November, he seemed to be worse than he was in August and that is why he started doing other things to try to improve McGowan's condition although those treatments never really helped. The change in the dates Dr. Conn gave as maximum medical recovery were a result of Dr. Conn's reassessment of McGowan's condition.
We resolve the conflict in Dr. Conn's testimony in McGowan's favor. Although McGowan's condition did not improve after August of 1987, Dr. Conn continued treatment in the hope that it would. Dr. Conn was constantly reassessing McGowan's condition and was hopeful of improving that condition until July 8, 1988, when he finally released McGowan. Where only Dr. Conn has testified as to the date of maximum medical recovery, his testimony is by necessity given great weight. His explanation as to his change of mind is certainly plausible and is supported by McGowan's testimony that he continued to suffer from swelling and pain. The evidence substantially supports a finding of July 8, 1988, as the date of maximum medical recovery.

*170 CONCLUSION
After considering the evidence as a whole, we believe the finding by the Circuit Court that McGowan reached maximum medical recovery on July 8, 1988 is supported by substantial evidence and so we affirm that portion of the judgment. However, we reverse that portion of the circuit court's judgment which affirmed the Commission's finding that McGowan suffered only a 40% industrial loss of the use of his lower left extremity. We find that the evidence is substantial that McGowan suffered a 100% industrial loss of use of his leg, a scheduled member.
We reverse and render as to the disability benefits and order that Orleans Furniture and its carrier, United States Fidelity and Guaranty Company, pay McGowan the sum of $105.34 for the period beginning September 16, 1985 and ending July 8, 1988, as compensation for temporary total disability and the sum of $105.34 for 175 weeks as compensation for the industrial loss of use of his lower left extremity, with proper credit for any such compensation heretofore made to the claimant. It is also ordered that the employer pay compensation for the medical services and supplies required by the nature of claimant's injury or the process of his recovery as provided by Section 71-3-15 of the Mississippi Code and additional compensation for reasonable vocational rehabilitation purposes if the claimant is accepted for vocational rehabilitation training and maintenance while undergoing vocational rehabilitation according to Section 71-3-19 of the Mississippi Code.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN, BANKS and MCRAE, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.
NOTES
[1] It has been five and a half years since this claimant was injured. We urge everyone involved in workers' compensation cases to make every effort to reach a resolution as quickly as possible. The very nature of this type of action demands a quick resolution. An employee who is unable to work because of an injury needs immediate relief.