BRIDGES, J.,
for the Court:
¶ 1. On October 21, 1996, the claimant in this case, Darlene Rodgers, filed a petition to controvert, describing a work related injury arising out of her employment with Shelby Group International, Inc. On March 29, 1999, a hearing was held before an administrative law judge who ordered that Rodgers was entitled to temporary total disability benefits at the rate of $200 per week beginning March 15, 1996 and ending July 17, 1996. Rodgers was also awarded any penalties and interest on all due and unpaid compensation benefits and any medical services and supplies as required by the nature of her injury.
¶ 2. On April 23, 1999, Rodgers appealed this order to the Mississippi Workers’ Compensation Commission. A hearing was held before the Full Commission on *629 June 28, 1999. The Commission affirmed the order of the administrative law judge.
¶3. Feeling aggrieved, Rodgers filed this appeal and cites five issues as error. First, she alleges that the Commission erred as a matter of law in fading to order Shelby to provide for her ongoing medical needs. Next, she claims that the Commission erred in finding that she had reached maximum medical improvement (MMI) and in failing to reinstate temporary total disability benefits. She further asserts that the Commission erred in finding that she did not suffer permanent total industrial disability. Next, she alleges that the Commission erred in making vocational assumptions. Finally, she asserts that the Commission erred in failing to assess statutory penalties and interest against Shelby.
¶ 4. Finding no error, we affirm.
FACTS
¶ 5. Rodgers was employed by Shelby on August 15, 1994, as a payroll clerk. Her duties included entering the time cards for all employees and typing reports and other documents one day a week. On October 31, 1994, Rodgers reported a work-related injury. That same day, Rodgers saw her family physician, Dr. D.L. Harrison, who diagnosed her with carpal tunnel syndrome in her left hand. Dr. Harrison referred her to Dr. James Calandruccio, whom she saw after a visit with Dr. T.T. Lewis, company physician for Shelby.
¶ 6. Rodgers first saw Dr. Calandruccio in January 1995. He diagnosed her with carpal tunnel syndrome. Dr. Calandruccio treated her for the carpal tunnel until December of 1998, including performing an endoscopic left sided release in March of 1996. Dr. Calandruccio found Rodgers to be at MMI on July 17, 1996. He gave her an impairment rating of zero percent and stated that she did not exhibit signs of a long-term condition.
¶ 7. Although Dr. Calandruccio found her to be at MMI in July of 1996, Rodgers continued to seek treatment for complaints of pain and tingling. She saw Dr. Alan Freeland in October of 1997. He was appointed as an independent medical examiner by the administrative law judge. All tests performed by Dr. Freeland were returned with normal results. He indicated that her continued pain was of “an unknown etiology.” Rodgers also had sporadic visits with Dr. Calandruccio during this time. The tests performed by him were also returned as normal. Her last visit was on December 30, 1998, when he scheduled her to return in one month for further nerve tests; however, Rodgers did not return for this treatment.
¶ 8. Rodgers was employed with Shelby for nine months. In April of 1995, she moved with her husband and family to Greenville, Mississippi. Including her current position with the Greenville Blues-man, a minor league baseball team, Rodgers has had five jobs since leaving Shelby. All of these subsequent jobs have required, her to engage in work similar to what she performed at Shelby. She has only been unemployed a few months while looking for other employment.
STANDARD OF REVIEW
¶ 9. Appellate review of compensation claims is a narrow one. The Mississippi Supreme Court has stated, “[tjhat the findings and order of the Workers’ Compensation Commission are binding on the court so long as they are ‘supported by substantial evidence.’ ” Liberty Mutual Insurance Company v. Holliman, 765 So.2d 564(¶ 6) (Miss.Ct.App.2000) (quoting Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994)). The Commission’s order will be reversed only if the *630 court finds that the order was clearly erroneous and contrary to the overwhelming weight of the evidence. Liberty Mutual Insurance Company, 765 So.2d at (¶ 6).
¶ 10. An appellate court may not hear evidence in a workers’ compensation case. Atlas Roll-Lite Door Corp. v. Ener, 741 So.2d 343(¶ 8) (Miss.Ct.App.1999). Instead, the court is restricted to a determination of whether or not the decision of the commission is supported by substantial evidence. If so, the decision of the Commission should be upheld. Id.
¶ 11. The claimant has the burden of proof. Id. In order to meet this burden, he must show an accidental injury arising out of and in the course of his employment and a causal connection between the injury and the claimed disability. Id.
LAW AND ANALYSIS
I. DID THE COMMISSION ERR IN FAILING TO ORDER SHELBY TO PROVIDE FOR RODGERS’ ONGOING MEDICAL NEEDS?
¶ 12. Mississippi Code Annotated § 71-■3-15(1) states in pertinent part, “The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require.” Miss.Code Ann. § 71-3-15(1) (Rev.2000).
¶ 13. Rodgers claims that the Commission erred in failing to order Shelby to pay for her alleged ongoing medical needs. She claims that Drs. Calandruccio, Harrison and Geissler all recommended further treatment and that payment for such treatment should be granted to her.
¶ 14. As stated above, this Court will defer to the findings of-the Commission as long as those finding are supported by substantial evidence. Mitchell Buick, Pontiac & Equip. Co. v. Cash, 592 So.2d 978, 980 (Miss.1991). In this case, the administrative law judge made a specific finding that Shelby was not responsible for any medical supplies claimed by Rodgers after December 4,1997, the date Dr. Free-land found her to be at MMI with no impairment. The administrative judge noted that Rodgers has had five jobs, all of which required her to use her hands, since leaving Shelby. At one of these jobs, she told Dr. Calandruccio that she was required to work between fifty and sixty hours a week for some time. The judge further noted that Dr. Calandruccio could not definitely relate her continuing complaints to the original work injury. When asked whether Rodgers’s complaints were solely related to her work at Shelby or some other subsequent employment, Dr. Calandruccio replied, “Both I think are partially true. I don’t know the answer to that question.” Dr. Freeland testified that he found her complaints to be of “an unknown etiology” and there was nothing more he could do for her. After a thorough review of all the evidence and testimony of Rodgers and the treating physicians, the judge stated in her order, “If she is having continuing problems after leaving Shelby Group International nearly four years ago, it is by now for some reason other than her work at Shelby Group International. Her testimony to the contrary is simply not convincing.” The Commission adopted these findings and affirmed the order of the administrative judge in full.
¶ 15. “The Commission is the trier of facts, as well as the judge of credibility of witnesses, and the findings of fact supported by substantial evidence should be affirmed by the court.” Siemens Energy and Automation, Inc., v. Pickens, 732 So.2d 276(¶ 35) (Miss.Ct.App.1999). Be *631 cause there is substantial evidence in the record to support the Commission’s decision to uphold the administrative judge’s findings, this Court finds this argument to be without merit.
II. DID THE COMMISSION ERR IN FINDING RODGERS REACHED MMI AND IN FAILING TO REINSTATE TEMPORARY TOTAL DISABILITY BENEFITS?
¶ 16. Rodgers frames this argument in much the same manner as the one above. She maintains that further treatment was ordered by her physicians and that she may find relief if allowed to receive this treatment. She argues that if she could benefit from the treatment, then she could not have reached MMI. Rodgers cites McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 168-70 (Miss.1991), in support of this argument.
¶ 17. Rodgers’s case is distinguishable from the facts presented in McGowan. One significant distinction is that McGowan was found to have suffered substantial impairment to a scheduled member. In the case sub judice, the only witness to indicate that Rodgers suffered any impairment was Dr. Tyler Kress. Dr. Kress is a biomedical engineer, who testified by deposition as an expert for Rodgers. Dr. Kress is not a medical doctor and did not examine Rodgers. His only contact with her and the facts of this ease are the documents she sent to him and a forty-five minute telephone conversation one hour before he gave his deposition testimony. Based upon the foregoing facts, the administrative judge and, in turn, the Commission did not find his testimony to be reliable.
¶ 18. The Commission was convinced by the testimony of Drs. Calandruccio and Freeland. Dr. Calandruccio indicated that Rodgers reached MMI as of July, 1996. Dr. Freeland did not examine Rodgers until October of 1997. He ordered X-rays of her hands and cold tolerance studies. He referred her to Dr. Michael Graeber for nerve conduction tests. These tests, as well as the X-rays and cold tolerance studies, were returned with normal results. Dr. Freeland noted that Rodgers did not need further surgery and he had nothing further to offer her. He found her to be at MMI on December 4, 1997. His final diagnosis was “pain of unknown etiology.”
¶ 19. This same issue was raised in Dulaney v. National Pizza Co., 733 So.2d 301(¶ 31) (Miss.Ct.App.1998). In that case, the court stated that the Commission, as the finder of fact, must decide which physician’s opinion is most credible. Id. Because the Commission’s decision to accept the testimony of one physician over another was supported by evidence of the physician’s experience and expertise in the relevant medical field, the court upheld that decision as proper. Id.
¶ 20. The same made be said for the finding of the Commission in this case. The Commission looked to the credentials of Dr. Calandruccio and Dr. Freeland. Dr. Calandruccio is a hand specialists at the Campbell Clinic in Southaven, Mississippi. Dr. Freeland is a hand specialist at the University Orthopedic Associates. Both of these doctors are highly respected specialists in their area of practice. On the other hand, Dr. Kress, Rodgers’ expert, is not a medical doctor. He did not examine her and had limited knowledge about the facts of the case and her subsequent employment. While Dr. Kress may be very qualified in his field of study, industrial and biomedical engineering, the Commission’s decision to accept the findings of Drs. Calandruccio and Freeland over those of Dr. Kress is clearly supported by the medical evidence in the record.
*632 III. DID THE COMMISSION ERR IN FINDING THAT RODGERS DID NOT SUFFER PERMANENT TOTAL DISABILITY?
¶ 21. Under this assignment of error, Rodgers argues that the Commission erred in failing to find that she suffered a one hundred percent total industrial disability. An industrial disability is the functional or medical disability that affects the claimant’s ability to perform the duties of her employment. Walker Mfg. Co. v. Butler, 740 So.2d 315 (¶ 44) (Miss.Ct.App.1998). The focus in these cases is “the degree of loss of use of the member for wage earning purposes.” Id. Whether or not the claimant has suffered a one hundred percent total industrial loss is a question of fact to be determined by a look at the evidence as a whole. Id.
¶ 22. To determine whether or not a claimant has suffered a permanent disability, the court must consider what types of jobs may be included in her “usual employment” and whether the claimant is capable of engaging in those types of employment. Id. This question may be answered by considering the factors listed by the Mississippi Supreme Court in McGowan. That court indicated that a court should consider: “the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.” McGowan, 586 So.2d at 167. It is these factors that the court indicated that the Commission should look to when considering the evidence as a whole. Id.
¶ 23. In this case, Rodgers has had five jobs since leaving Shelby. She testified that she left one of the jobs after only three days because she was unable to do the repetitive motions required by the position. However, soon thereafter, she took a job doing the same type of work. She stayed with this job for nearly three years and, at one time, told Dr. Calandrue-cio that she was working fifty to sixty hours with no assistance.
¶24. As noted by the administrative law judge, Rodgers is an educated person with training, education and experience in business and accounting, computer systems, and advertising and graphic art. She has been employed as a payroll clerk, a personal secretary, a customer service representative, an office manager, and a receptionist. Rodgers has demonstrated no difficulty in securing employment; in fact, she has held five jobs since Shelby.
¶ 25. It should be noted that Rodgers never missed a day of work due to her injuries while employed by Shelby. Also relevant to this issue is the fact that when she had surgery for her carpal tunnel syndrome, she did not miss any work, nor did Dr. Calandruccio indicate that she should not report to work everyday. He gave her lifting and weight restrictions until he felt her wrist to have healed and then placed her at MMI with no impairment rating.
¶ 26. Rodgers has presented no credible evidence that she has suffered a one hundred percent permanent disability. She has been employed the entire time since leaving Shelby, except for a few months spent in locating new employment. Further, she has presented no evidence of loss of wage earning capacity. Indeed, her income has increased since leaving her position at Shelby. Rodgers testified to continued pain and need for treatment but the administrative judge found this testimony “unconvincing.”
IY. DID THE COMMISSION ERR IN MAKING VOCATIONAL ASSUMPTIONS?
¶ 27. Rodgers alleges that the administrative law judge made certain inappropriate comments in her order concerning *633 Rodgers’ employability. Rodgers cites to Barnes v. Jones Lumber Co., 637 So.2d 867 (Miss.1994) in support of this argument. She alleges that the court in Barnes “soundly addressed and rebutted” the issue of vocational assumptions made by an administrative judge. After a thorough review of that case, the strongest statement in support of this argument is as follows, “[hjowever, in the case sub judice, there is not substantial evidence to support the commission’s finding that merely because he had a high school education, Barnes should have been able to find a job.” Id. at 870.
¶28. The administrative judge made the following statements in her order:
Importantly, Ms. Rodgers is a very articulate person with a high school education, two years of junior college training, education and experience in business and accounting, computer skills and knowledge of current computer programs, and advertising and graphic art experience with newspapers. She is a very capable woman with good transferable skills and on the job experience which gives her a far greater wage-earning capacity than the average Mississippian-and at light and sedentary positions. She has proven that she does not have difficulty in finding jobs, as she has obtained five since the work injury in 1994. She may choose to work part-time because of her young children, but she is not medically or physically precluded from earning as much as she was earning at Shelby, or more. At her current job, she earns $9 an hour or $360 a week, $60 more a week than she was earning at Shelby.
These comments are very similar to those found in other cases that address workers’ compensation issues. In fact, the statements made by the administrative judge address the factors outlined in McGowan to be considered by a court when trying to determine if a claimant is industrially disabled. McGowan, 586 So.2d at 167.
¶ 29. Rodgers’s argument that the administrative judge erred in considering her education, training, and experience is completely contradicted by case law. As such, this issue is without merit.
V. DID THE COMMISSION ERR IN FAILING TO ASSESS STATUTORY PENALTIES AND INTEREST AGAINST SHELBY?
¶ 30. This argument would be applicable only if this Court had been persuaded by Rodgers’s other arguments. Because this Court finds that Shelby has paid all temporary benefits as due and does not owe Rodgers any further compensation, this issue is without merit.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR.