MAXWELL, J.,
for the Court:
¶ 1. Although Gavin Guy suffered a 25% medical impairment to his left leg due to a work-related knee injury, the Administrative Judge (AJ) awarded him a 100% industrial loss of his left leg. The Workers’ Compensation Commission (Commission) affirmed. Because industrial loss, in contrast to medical loss, compensates for the loss in wage-earning capacity and because Guy presently earns $10,000 more a year, we find the award of 100% industrial loss to be unsupportable. Therefore, we reverse and remand the decision of the Commission.
BACKGROUND
¶ 2. While working as a patrolmen for the Laurel Police Department (Laurel), Guy injured his left knee apprehending a suspect fleeing from a nightclub brawl. He underwent numerous knee surgeries. Although he remained employed with Laurel, briefly as a K-9 officer and then back as a patrolman, he was concerned because *1225 he could no longer chase suspects or easily get in and out of his patrol car.
¶ 3. In 2006, Guy voluntarily left Laurel to take a job with the Petal Police Department (Petal) as a warrant officer. He was promoted to the Investigations Unit, a position that paid $10,000 a year more than his former position with Laurel. In 2007, Petal initiated physical testing for all its police officers, including Guy. Petal’s chief of police, Lee Shelbourn, accommodated Guy’s knee injury by allowing him to perform the test on a stationary bike instead of requiring him to run.
¶ 4. At the hearing before the AJ, Guy expressed concerns that his accommodation at Petal would not last long. Chief Shelbourn, sixty-one years old at the time of the hearing, was an at-will employee who potentially would not be reappointed by the mayor and city council after the next city election cycle. Further, Guy was concerned he might not be able to pass the bike test in the future.
¶ 5. The AJ found Guy’s numerous knee surgeries, his inability to continue as a patrol officer, and his need for special accommodation to pass the physical test given by Petal and most police forces all supported the finding that Guy had sustained a 100% industrial loss to his left leg.
¶ 6. The AJ found Guy’s present employment and higher salary did not weigh against finding a 100% industrial loss of Guy’s left leg because Chief Shelbourn could be replaced after next city election, leaving the possibility that Guy might be unable to pass the physical testing requirements under a new chief at Petal or with a different police force.
¶ 7. Both the Workers’ Compensation Commission (by 2-1 vote) and the circuit court affirmed the AJ’s decision.
LAW
I. Standard of Review
¶ 8. “The findings and order of the Workers’ Compensation Commission are binding on the Court so long as they are ‘supported by substantial evidence.’ ” Mitchell Buick v. Cash, 592 So.2d 978, 980 (Miss.1991) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). “An appellate court is bound even though the evidence would convince that court otherwise if it were instead the ultimate fact finder.” Walker Mfg. Co. v. Butler, 740 So.2d 315, 320 (¶19) (Miss.Ct.App.1998) (citing Barnes v. Jones Lumber Co., 637 So.2d 867, 869 (Miss.1994)). “This Court will overturn a Commission decision only for an error of law or an unsupportable finding of fact.” Id. (quoting Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991)).
II. Workers’ Compensation Act A. Total v. Partial Disability
¶ 9. The Mississippi’s Workers’ Compensation Act compensates for both permanent total disability and permanent partial disability (scheduled-member). Miss.Code Ann. § 71-3-17 (Rev.2000).
¶ 10. If a worker suffers permanent total disability, the statute provides him two thirds of his average weekly wage, subject to the maximum limit of benefits, for up to 450 weeks. Miss.Code Ann. § 71-3-17(a). If a worker suffers the loss of a scheduled-member, the statute provides him two thirds of his average weekly wage for the number of weeks arbitrarily assigned by the Legislature to the particular body part. Miss.Code Ann. § 71-3-17(c). Loss of a leg equals 200 weeks of compensation. Miss.Code Ann. § 71-3-17(c)(2).
¶ 11. The purpose of permanent total disability is to compensate for loss of *1226 wage-earning capacity and not the worker’s medical disability. Smith v. Jackson Const. Co., 607 So.2d 1119, 1125 (Miss.1992) (citing Miss.Code Ann. § 71 — 3—B(j) (Rev.2000)). In contrast, compensation for scheduled-member disability is arbitrarily awarded according to which scheduled-member is disabled. Id. at 1126 (citing Walker Manuf. Co. v. Cantrell, 577 So.2d 1243, 1247-48 (Miss.1991)). In scheduled-member compensation, the focus is on the functional loss of the use of the body part “without regard to loss of wage earning capacity.” Id.
B. Loss of Scheduled Member
¶ 12. This is a scheduled-member case, controlled by section 71-8-17(c). Subsection 17(c) compensates for the loss of a scheduled member (e.g. amputation), the loss of use of a scheduled member (e.g. paralyzation), and partial loss of use. Miss.Code Ann. § 71-3-17(c)(2), (22), & (23). See Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 745 (¶12) (Miss.2002) (distinguishing loss, loss of use, and partial loss of use of scheduled members).
¶ 13. The law compensates for two types of loss of use: (1) “functional” or “medical” and (2) “industrial” or “occupational.” “ ‘Functional’ or ‘medical’ loss refers to physical impairment.” Jensen, 828 So.2d at 745 (¶ 11) (citing McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 166 (Miss.1991)). “ ‘Industrial’ or ‘occupational’ loss is the functional or medical disability as it affects the claimant’s ability to perform the duties of employment.” Id. (internal quotations omitted). See Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329, 331 (Miss.1988) (“[T]o establish industrial disability, the burden is upon the claimant to prove (1) medical impairment, and (2) that the medical impairment resulted in a loss of wage-earning capacity.”) (citing Miss.Code Ann. §§ 71-3-3®, 71-3-17(c)(25) (Rev.2000)).
¶ 14. In a scheduled-member case, a worker is always entitled to compensation for the medical or functional loss of his body part, regardless of whether the functional loss impacts his wage-earning capacity. Jensen, 828 So.2d at 745-46 (¶¶ 13-14). But the law recognizes there may be times when the industrial loss is greater than the medical loss. Id. In these cases, “the claimant’s industrial or occupational disability or loss of wage-earning capacity controls his degree of disability.” Id. at 745 (¶ 13) (quoting Smith, 607 So.2d at 1126).
C. Loss of Wage-Earning Capacity
¶ 15. We find the Mississippi Supreme Court’s decision in Meridian Professional Baseball Club v. Jensen provides a framework for analyzing this case. Jensen, 828 So.2d at 747-48 (¶¶ 21-22). Jensen too was a case where a worker (a minor-league-baseball player) suffered partial functional loss of a scheduled member (his arm). The issue was whether the partial functional loss resulted in a total industrial loss because Blair Jensen could no longer play baseball due to his injury. The evidence showed Jensen had suffered a 7% medical impairment. The AJ compensated Jensen for a 25% industrial loss. Id. at 746 (¶ 15). The supreme court considered Jensen’s claim that he had suffered a total industrial loss of his left arm:
[W]here a permanent partial disability renders a worker unable to continue in the position held at the time of injury, we hold that such inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant’s ability to earn the same wages which the claimant was receiving at the time of injury. The presumption arises when the claimant *1227 establishes that he has made a reasonable effort but has been unable to find work in his usual employment, or makes other proof of his inability to perform the substantial acts of his usual employment. Rebuttal is shown by ah the evidence concerning wage-earning capacity, including education and training which the claimant has had, his age, continuance of pain, and any other related circumstances. We find support for this holding in the same cases which created the substantial acts doctrine and which indicate that the ultimate determination must be made from the evidence as a whole considering loss of wage-earning capacity.
Id. at 747-48 (¶ 21) (citing McGowan, 586 So.2d at 167).
¶ 16. According to Jensen, there is a presumption of 100% industrial loss when the worker proves he can no longer perform “the substantial acts of his usual employment.” Id. At issue in that case was the scope of Jensen’s “usual employment.” Usual employment is “broader in scope than the job held at the time of the injury.” Id. at 747 (¶ 20). “Usual employment in this context means the jobs in which the claimant has past experience, jobs requiring similar skills, or jobs for which the worker is otherwise suited by his age, education, experience, and any other relevant factual criteria.” Id.
¶ 17. The supreme court found Jensen’s usual employment to be broader than professional baseball. Considering Jensen’s youth, education, successful post-injury employment, and higher post-injury wage earnings, the supreme court rejected his claim for total industrial loss and affirmed the award of 25% percent industrial loss. Particularly, because Jensen was earning higher wages post-injury, the supreme court noted:
For this Court to award those benefits which are meant to compensate for an inability to work, even though the worker in fact is able to secure employment at a comparable or even greater salary, would bestow a windfall contrary to the specific beneficial and remedial purpose of workers’ compensation.
Id. at 749 (¶ 24) (citations omitted).
¶ 18. Jensen reinforced prior cases that held loss of wage-earning capacity should be determined by considering the evidence as a whole. Id. at 748 (¶ 21); see, e.g., McGowan, 586 So.2d at 167. While the supreme court does not directly state that evidence of actual wage-earning capacity at a higher level post-injury takes away the presumption of total industrial loss, its discussion of a windfall indicates that, while a worker who is earning post-injury wages may nonetheless be entitled to an industrial loss greater than his medical loss, he cannot be compensated for a total loss.
DISCUSSION
¶ 19. Laurel argues the evidence does not support finding a 100% industrial loss because: (1) Guy’s leg only has a 25% medical impairment; (2) Laurel did not terminate Guy because of his impairment—Guy voluntarily left; (3) Guy continues to work in his field of law enforcement; and (4) Guy earns $10,000 more a year than he did at the time of the injury. We agree. In the face of undisputed evidence of Guy’s continued earning wages in the field of law enforcement, we find the award of 100% industrial loss unsupportable.
¶ 20. Guy claims his wage-earning capacity is irrelevant because this is a scheduled-member case. This claim would be true only if the AJ had based her award on Guy’s medical loss of 25%. But the AJ found, and the majority of the Commission *1228 affirmed, Guy had suffered a greater industrial loss of 100%. Because the award was based on industrial loss, Guy’s loss of wage-earning capacity necessarily becomes the controlling issue. Jensen, 828 So.2d at 745 (¶ 13).
¶ 21. Under Jensen, a rebuttable presumption of 100% industrial loss of a member exists when a claimant shows he can no longer “perform the substantial acts of his usual employment.” Id. at 748 (¶21). Laurel argues Guy’s “usual employment” is law enforcement. Thus, Guy did not prove he was unable to perform the substantial acts of law enforcement because he had remained employed in the law-enforcement field since the injury. Laurel draws a comparison with Jensen, where the claimant who earned more money after his injury could not be compensated for the loss of his ability to play professional baseball. While Guy may have wanted to work specifically as a patrol officer, Laurel argues, workers’ compensation is not intended to compensate for a lost vocational preference.
¶ 22. But Guy argues the sedentary nature of his current work is a special accommodation. All police departments have physical testing requirements, which the AJ found Guy could not meet based on his injury. The AJ appears to have been persuaded by this fact in finding Guy could not perform the substantial acts of his usual employment.
¶ 23. We agree with Laurel that based on Guy’s past experience and job skills, Guy is suited for a number of positions in law enforcement, making his “usual employment” broader than being a patrolman. But even under the broader view that Guy’s usual employment was law enforcement, the presumption of total industrial loss arose based on the physical test required of all law-enforcement officers. Because Guy cannot run and because being able to run is a substantial act required of all law enforcement officers, he at least earned the presumption of total industrial loss of his leg.
¶24. But this presumption was “subject to other proof of the claimant’s ability to earn the same wages which the claimant was receiving at the time of injury.” Id. at 747 (¶ 21). “Rebuttal is shown by all the evidence concerning wage-earning capacity-” Id. at 748 (¶ 21).
¶25. It is not disputed that Guy, instead of being terminated, voluntarily left Laurel for a job with Petal and now earns more wages. The AJ discounted these facts, instead focusing on Guy’s evidence that he was receiving a special accommodation provided by the Petal police chief. The AJ reasoned Chief Shelbourn may retire or not be re-appointed, which may result in a new police chief who might not accommodate Guy in the physical testing requirement, which may result in Guy being terminated at some point in the future. We agree with Commissioner Junkin, who dissented in this case, that Chief Shelb-ourn’s future employment is irrelevant to the issue of Guy’s wage-earning capacity. As Commissioner Junkin noted, “the vast number of working Mississippians are employed at the will and pleasure of their employer, and anyone employed on this basis is subject to having their employment terminated suddenly and without warning, for good reason or no reason at all.” MWCC No. 04-02894-J-3226 (Jun-kin, Commissioner, dissenting).
¶ 26. The AJ’s conclusion that Guy might lose his job if Chief Shelbourn were not re-appointed as police chief is far too speculative to support an award of total loss of wage-earning capacity. Laurel presented clear evidence that Guy has not suffered any loss in wages earned, rebutting any presumption of total industrial *1229 loss. As in Jensen, because Guy was earning higher wages post-injury, he cannot receive compensation for 100% loss. To allow Guy’s award to stand would be to “bestow a 'windfall contrary to the specific beneficial and remedial purpose of workers’ compensation.” Jensen, 828 So.2d at 749 (¶ 24) (citations omitted).
¶ 27. Of course, Guy’s post-injury wage-earning capacity does not defeat scheduled-member compensation. Id. at 745 (¶ 13) (acknowledging statutory right to compensation for medical impairment regardless of impact on worker’s ability to perform his job). It does not even defeat a finding of an industrial loss greater than Guy’s 25% medical loss. See id. (affirming 25% industrial loss based on 7% medical impairment). But Guy’s actual wage-earning ability is a strong circumstance that must be considered along with the evidence as a whole to determine to what extent, if any, Guy suffered an industrial loss greater than his medical loss.
¶ 28. Because the AJ failed to consider Guy’s actual post-injury wage-earning capacity, we must reverse the circuit court’s affirmance of the Commission’s decision and remand this case to the Commission (1) to determine whether Guy experienced an industrial loss less than 100% but greater than his 25% medical loss and (2) to award Guy the greater of his industrial or medical loss.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE AND ROBERTS, JJ, CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.