MAXWELL, J.,
for the Court:
¶ 1. In scheduled-member eases, like this one, when the industrial loss is greater than the functional loss, the injured employee is entitled to the greater of the two. An industrial-loss determination considers whether a loss of wage-earning capacity has occurred. Thus, while an injury that renders a worker unable to continue in the position held at the time of injury creates a rebuttable presumption of total industrial loss of the member, this presumption is subject to other proof of the claimant’s ability to earn the same wages he received at the time of injury.
¶ 2. Here, it is undisputed Rufus Robbins can no longer perform the specific job he held when he injured his left shoulder at work. But Robbins still works at Howard Industries, albeit in a different position. And he earns more wages than he did before the injury. As Howard Industries sees it, Robbins’s continued employment and higher wages not only rebutted the presumption of a total industrial loss of his left arm but also prevented the Mississippi Workers’ Compensation Commission from finding Robbins suffered a greater industrial loss than his functional loss. So Howard Industries asks us to reverse the Commission’s finding of a ninety percent industrial loss of Robbins’s left arm and instead limit Robbins’s compensation to his forty-five percent functional loss.
¶ 3. But evidence of higher post-injury wage earning does not close the door to a finding that the industrial loss was greater than the functional loss. Rather, it is evidence the Commission must consider, along with other evidence about wage-earning capacity like the worker’s age, education, and work experience. This is what the Commission did here. It balanced Robbins’s higher wages against his advanced age, limited education, and inability to use his left arm in his current position to conclude Robbins suffered a ninety percent industrial loss. Because the Commission properly considered the evidence and supported its finding with substantial evidence, we affirm.
Background Facts and Procedural History
I. Robbins’s Injury
¶ 4. Robbins has worked for Howard Industries since 1993. In 2005, he fell at work, injuring his right shoulder. At the time of the injury, he was more than seventy years old, and his average weekly wage was $457.25.
¶ 5. According to his physician, Dr. Stephen Nowicki, Robbins tore his rotator cuff. Dr. Nowicki operated on Robbins’s rotator cuff two different times, once in 2005 and again in 2006. During this time, Robbins worked intermittently, taking periods of time off for physical therapy. In 2007, Robbins went to see Dr. William Geissler. Dr. Geissler replaced Robbins’s rotator cuff with an artificial one. After some physical therapy, Robbins returned *116 to work in October 2007 and has worked ever since.
¶6. His post-injury average weekly wage has risen by more than $100.
II. Administrative Judge’s Order
¶ 7. In 2012, Robbins filed a Petition to Controvert with the Commission. At the time of the hearing in October 2013, Robbins was seventy-nine years bid.
¶ 8. The administrative judge (AJ) found Robbins was limited to schedule-member compensation under Mississippi Code Annotated section 71-3-17(c) (Supp.2014). He could not be awarded permanent total disability under section 71-3-17(a), as “he is capable of working and is presently working at Howard Industries.” See Lott v. Hudspeth Ctr., 26 So.3d 1044, 1049 (¶ 15) (Miss.2010) (holding that “the claimant must prove that she has made a diligent, yet unsuccessful, effort to garner some form of gainful employment” to prove total disability). But the AJ found Robbins was entitled to full compensation — 200 weeks — for the total loss of his left upper extremity based on a one-hundred percent industrial loss of his arm. See Miss.Code Ann. § 71-3-47(c)(1).
¶9. Robbins’s functional, or medical, loss of use of his left arm was at most forty-five percent. The impairment testing Dr. Nowicki had ordered for Robbins came back with a forty-five percent impairment rating. And the employer medical evaluation, performed by Dr. Rahul Vohra, assigned Robbins a forty percent impairment rating. But this impairment impacted his ability to work. Dr. Nowicki said Robbins should be restricted to sedentary work- with no heavy ’use of his left arm. And both Dr. Geissler and Dr. Voh-ra restricted him to lifting no more than ten pounds from floor to waist and no lifting at all above his shoulders.
¶ 10. Based on these restrictions, the AJ found Robbins “could not perform the substantial acts of his usual employment.” The AJ also, found Robbins “could not perform any of his previous jobs because of his left shoulder injury.” Based on these findings, the AJ found Robbins had suffered a total industrial loss of use of the scheduled member, entitling him to the full 200 weeks of permanent partial disability at a compensation rate of $304.83 per week, beginning June 29, 2010, the date of his maximum medical improvement.
¶ 11. Howard Industries was to be credited for all previous payments for permanent partial disability and for any overpayment of disability. But Robbins was entitled to legal interest and statutory penalties- on any unpaid installments of disability benefits. Robbins was also entitled to reasonable and necessary medical services and supplies.
III. Full Commission’s Order
¶ 12.. Howard Industries sought review of the AJ’s order by the Commission. The Commission amended the AJ’s order, reducing Robbins’s industrial loss of use to ninety percent.
¶ 13. According to the Commission, Robbins “is elderly'with a limited education [ (left- high school to join the Navy)] and has been assigned sedentary work restrictions along with a 45% anatomical impairment rating.” But Robbins “has continued working in an accommodated position earning greater wages than at the time of his injury.”
¶ 14. Like the AJ, the Commission found Robbins was “unable to perform the substantial acts of his usual 'employment, thereby requiring his employment in an accommodated position,” The Commission found this inability created a présumptioh of a total industrial loss. But the Commission rightly recognized this presumption *117 was subject to other proof of Robbins’s ability to earn the same wages he was receiving when injured. Because Robbins was earning higher wages post-injury, the Commission found Robbins could not be compensated for a total loss. And after considering all relevant wage-earning-ca-paeity evidence, the Commission reduced his industrial loss of use to ninety percent.
¶ 15. Thus, it awarded Robbins 180 weeks’ compensation at $804.83 per week, beginning June 29, 2010. Like the AJ, the Commission credited Howard Industries for any excess temporary and permanent disability benefits already paid and assessed legal interest and statutory penalties for any installments not timely paid. Howard Industries was also ordered to continue paying all reasonable and necessary medical services and treatment.
¶ 16. Howard Industries appealed the Commission’s order 'to this court.
Discussion
¶ 17. On appeal, our review is limited. We will overturn a Commission decision “only for an error of law or an unsupported finding of fact.” Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 743 (¶ 8) (Miss.2002) (citation omitted). And here we find neither.
¶ 18. While raised as three separate issues, Howard Industries’ appeal boils down to one claim — that it was error for the Commission to find Robbins’s industrial loss of use was greater than his impairment rating of forty-five percent.[1]
I. Functional Versus Industrial Loss
¶ 19. In a seheduled-member claim like this one, a worker is “entitled to the higher of the two types of losses” — (1) functional loss or (2) occupational loss. Id. at 745 (¶ 14). Functional loss is the same as medical disability and is concerned only with the physical impairment to the scheduled member. McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 166 (Miss.1991). According to the medical evidence, Robbins suffered at most a forty-five percent impairment to his left arm. And Howard Industries does not dispute this led to a forty-five percent functional loss of use.
¶20. What Howard Industries contests is the Commission’s finding that Robbins’s occupational loss of use was greater than his functional loss. Occupational loss is the same as industrial loss. While functional loss disregards loss of ability to work, industrial loss is “the functional or medical disability as it affects the claimant’s ability to perform the duties of employment.” Id. (citation omitted). With industrial loss, “[t]he question ... is the degree of loss of use of the member for wage earning purposes [.]” Id. (emphasis added) (quoting Piggly Wiggly v. Houston, 464 So.2d 510, 512 (Miss.1985)). Because Robbins earns higher wages in his continued employment, Howard Industries insists he could not have suffered an industrial loss — let alone an industrial loss two times greater than his functional loss.
¶21. As support, Howard Industries cites Jensen, 828 So.2d at 745-50 (¶¶ 13-25), and City of Laurel v. Guy, 58 So.3d 1223, 1226-27 (¶¶ 15-18) (Miss.Ct.App.2011), claiming the Commission misapplied their holdings. While both cases rejected a finding of total (one hundred percent) industrial loss of use of a scheduled mem *118 ber' in light of evidence of higher wage earning, neither says that earning a higher wage prevents finding a greater industrial loss than functional.[2] See Jensen, 828 So.2d at 749 (¶ 25); Guy, 58 So.3d at 1227(18). In fact, Jensen affirmed the Commission’s finding of a twenty-five percent industrial loss of use of Jensen’s arm, though his impairment rating. was only seven percent. Jensen, 828 So.2d at 749 (¶ 25).
¶ 22. According to Jensen, “the ultimate determination must be made from the, evidence as a whole considering loss of wage-earning capacity.” Id. at 748 (¶ 21). This evidence includes “education and training which the claimant has had, his age, continuance of pain, and any other related circumstances.” Id. We find the Commission rightly considered all evidence of Robbins’s wage-earning capacity. While Robbins continued to work earning higher wages, he was also advanced in age, had limited education, continued to have pain in his left arm, and was restricted to no heavy lifting. So based on the evidence as a whole, the Commission found Robbins suffered a ninety percent industrial loss.
¶23. Though Howard Industries cites two post-Jensen cases that found the worker’s industrial loss did not exceed his or her functional loss, Gaston v. Tyson Foods, Inc., 122 So.3d 797 (Miss.Ct.App.2013), and Lovett v. Delta Regional Medical Center, 157 So.3d 88 (Miss.2015), those cases do not mandate the same outcome here. Under Jensen, determining industrial loss is a fact-intensive inquiry, which must be made on a case-by-case, basis. See Jensen, 828 So.2d at 747 (¶ 20). The Commission determined the facts in this case supported a higher industrial loss than functional. Because the Commission supported this finding with substantial evidence, we must affirm.
II. “Usual Employment”
¶24. While we defer to the Commission’s ultimate conclusion, we do question its finding that Robbins’s injury rendered him incapable of performing the “substantial acts of his usual employment” because he could not longer work as a lead-press operator. While Robbins could not longer work as a lead-press operator, Robbins was still capable of performing the duties of a horn-press operator, which Howard Industries strenuously denies was an “accommodated position.”
¶ 25. As the supreme court emphasized in Jensen, “ ‘usual employment’ is broader in.scope than the job held at the time of the injury.” Id. at 747 (¶ 20). Usual employment “means the jobs in which the claimant has past experience, jobs requiring similar skills, or jobs for which the worker is otherwise suited by his age, education, experience, and any other relevant factual criteria.” Id. (emphasis added). So based on this definition, Robbins’s “usual employment” included working as a horn-press operator because he was suited for the job based on his skills and experience. This is evidenced by the fact he is currently employed in this position — a position that existed before his injury.
¶ 26. Our concern with the Commission’s order is that it seems to equate Robbins’s inability to continue working as a lead-press operator with his no longer being able to perform the substantial acts of his usual employment. That is defining “usual employment” too narrowly. As *119 Jensen clearly directs, Robbins’s current employment in the same company, albeit in a different position, must factor into the usual-employment analysis. See id. at 747-48 (¶¶ 20-21).
¶ 27. That said, the fact Bobbins could no longer work as a lead-press operator was not insignificant. In Jensen, the supreme court held that when “a permanent partial disability renders a worker unable to continue in the position held at the time of injury, ... such inability creates a re-buttable presumption of total occupational loss of the member.” Id. at 747 (¶ 21). Of course, this presumption was “subject to other proof of the claimant’s ability to earn the same wages which the claimant was receiving at the time of injury.” Id.
¶ 28. So here, Robbins’s inability to return to his position as a lead-press operator earned him a presumption of a total industrial loss of his left arm. But as the Commission rightly recognized, this presumption was subject to proof that Robbins was still able to earn the same wages. This is why the Commission amended the AJ’s order and reduced Robbins’s industrial loss from total to ninety percent.
¶ 29. Because the Commission’s order followed Jensen’s rebuttable-presumption framework, we find no error of law justifying reversal.
¶ 30. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON,FAIR, JAMES AND WILSON, JJ., CONCUR.

. Howard Industries' second and third issues depend on its first. Howard Industries reasons, because the Commission erred in finding Robbins’s industrial loss of use was ninety percent (the first issue it raises), the Commission likewise erred in awarding him 180 weeks of permanent partial disability (the second issue it raises) and assessing interest and penalties on that award (the third issue it raises). Because we find no error in the first issue, we need not address the other two.

. Robbins’s continued wage-earning did, of course, prevent him from being compensated for permanent total (body as a whole) disability under Mississippi Code Annotated section 71-3-17(a). See Lott, 26 So.3d at 1049 (¶ 15); see also Miss.Code Ann. § 71—3—3(i) (Rev.2011) (defining disability as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment”).