# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-WC-01178-COA

**MUELLER INDUSTRIES, INC. AND SOMPO**         **APPELLANTS**
**AMERICA INSURANCE COMPANY**

**v.**

**JEFF SOUTH**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2022 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANTS: | DAVID B. McLAURIN |
| ATTORNEY FOR APPELLEE: | MICHAEL McHENRY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 10/24/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. On October 18, 2022, the Mississippi Workers' Compensation Commission entered a full Commission order that affirmed in part and amended in part the order of the administrative judge dated June 29, 2022. The Commission's order stated that Jeff South was entitled to "temporary total disability benefits at the rate of $477.82 for the period June 18, 2018, through August 23, 2018, . . ." and "permanent partial disability benefits at the rate of $477.82 for a total of 40 weeks based upon the loss of industrial use of the right upper extremity."

## FACTS AND PROCEDURAL HISTORY

¶2. Jeff South was an employee at Mueller Industries Inc. On August 22, 2017, he

sustained an injury while driving a forklift, a regular task associated with his employment. When South turned the steering wheel of the forklift, he felt a searing pain in his right wrist up to his right elbow and observed instant swelling. Initial x-rays on that same day revealed that his wrist bone was shattered. South was referred to Dr. Tyler Marks at Specialty Orthopedic Group for further treatment. South's wrist was put in a brace, he received injections, and he ultimately underwent surgery. Dr. Marks performed a proximal row carpectomy on November 29, 2017. During the surgery, a row of bones were removed from South's wrist.

¶3.　South's post-operative treatment was somewhat delayed because he suffered from pneumonia and chronic obstructive pulmonary lung disease (COPD). However, South was released to return to work on June 18, 2018, with modified restrictions of **no use** of his dominant upper extremity. The testimony is contradicted as to what happened next. Mueller claims that South never returned to work and was therefore terminated after exceeding the amount of negative points required for termination. Mueller claims that South incurred points both for being absent from work and failing to call to let his supervisor know that he was not coming in to work. According to South, he returned to work on June 29, 2018; however, Mueller did not have any jobs to accommodate his work restrictions. South claims that he was initially tasked with shelving bearings but was unable to complete the task because of the pain in his wrist. South was then given the task of sweeping the back dock and dumping fifty- to sixty-pound trash cans. South was also unable to complete these tasks without pain. South claims that he called to express his inability to perform the assigned

2

jobs, but Travis Fisher, the employee in charge of worker's compensation claims, was on vacation for two weeks. South claims that he talked with Fisher's secretary but admits that he did not continue to call because Fisher was on vacation. Mueller sent South a termination letter on July 17, 2018.

¶4. According to Dr. Marks, South reached maximum medical improvement (MMI) and was released to return to full-duty work on August 23, 2018, without any restrictions. Dr. Marks assigned South a 13% hand impairment rating, a 12% upper extremity impairment rating, and a 7% whole-person impairment rating. South returned to see Dr. Marks on September 4, 2019, complaining of continued pain and swelling in his right wrist. X-rays showed mild arthritis. Dr. Marks and South discussed the possibility of a wrist fusion surgery, but the surgery was not recommended for smokers. They decided against South having any further surgery at that time. Despite complaints of continued pain and swelling, South remained at MMI with no further recommendations or restrictions.

¶5. South filed a petition to controvert with the Mississippi Workers' Compensation Commission on November 7, 2017. Mueller filed its answer on November 16, 2017. An administrative hearing was held on November 4, 2020. The administrative judge (AJ) entered her initial order on June 29, 2022, and subsequently entered her amended order on July 1, 2022.[1] The amended order held that South was entitled to permanent partial disability benefits at the rate of $477.82 for a total of 19.5 weeks based on the permanent partial impairment rating to the right hand of 13%, which Dr. Marks assigned.

_____

[1] The amended order was entered to correct the spelling of the name of a certain witness. The findings did not change.

3

¶6. South filed a petition for review of the AJ's order with the Mississippi Workers' Compensation Commission on July 1, 2022. The full Commission held an oral argument on October 3, 2022. The Commission partially reversed the AJ's order and found that South was entitled to temporary total disability benefits for the period between June 18, 2018, and August 23, 2018. The Commission also held that South was entitled to permanent partial disability benefits for a total of forty weeks based on the loss of industrial use of the right upper extremity. Mueller filed its notice of appeal on November 16, 2022.

## STANDARD OF REVIEW

¶7. In *Clear River Const. Co. v. Chandler ex rel. Chandler*, 926 So. 2d 273, 275 (¶¶9-10) (Miss. Ct. App. 2006), this Court held:

> An appellate court must defer to an administrative agency's findings of fact if there is even a quantum of credible evidence which supports the agency's decision. *Hale v. Ruleville Health Care Center*, 687 So. 2d 1221, 1224 (Miss. 1997). "This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious." *Id*. at 1225; *Georgia Pacific Corp. v. Taplin*, 586 So. 2d 823, 826 (Miss. 1991). This court will overturn a commission decision only if there has been an error of law. *Id*.

> We do not sit as triers of fact; that is done by the Commission. *South Central Bell Telephone Co. v. Aden*, 474 So. 2d 584, 589 (Miss. 1985). We do not review the facts on appeal to determine how we would resolve the factual issues were we the triers of fact, rather our function is to determine whether the factual determination made by the Commission is supported by substantial credible evidence. *Id*.

## ANALYSIS

I. **Did the full Commission err in finding that South was entitled to temporary total disability (TTD) benefits from June 18, 2018, until August 23, 2018?**

¶8. Mueller claims that South was not entitled to TTD benefits because South never came back to work after he was released to work by Dr. Marks with certain restrictions. Mueller primarily relies on the testimony of Mueller employees Michael Baum and Travis Fisher in furtherance of their position. Fisher unfortunately was deceased at the time of trial and could not testify; however, his deposition was referenced at trial. While not initially involved in South's workers' compensation claim, Baum took over Fisher's job after his death. Simply put, Baum claims that South never came back to work after being released and failed to call in as required by company policy. As a result, his employment was terminated which would make him ineligible for TTD benefits.

¶9. South testified that he did, in fact, return to work (as discussed above) but could not complete the assigned tasks because of the physical restrictions Dr. Marks put in place. South claims that he called his employer to discuss his limitations and his assigned job, but Fisher was out of town for two weeks and not available to return his call. Further, South points out that he did not receive a negative point for not being at work on June 29, 2018. This fact seems to indicate that South was at work on that day, contradicting Baum's testimony. When Baum was questioned about this fact, he stated that he could not say with certainty whether South was at work on that day.

¶10. Given South's detailed testimony that he attempted to return to work but was assigned tasks that he ultimately could not complete and Baum's testimony that he could not say with certainty whether South returned to work on June 29, 2018, we cannot find that the Commission's ruling was arbitrary or capricious.

5

**II. Did the full Commission err in finding that South was entitled to permanent partial disability (PPD) benefits for a total of forty weeks based upon the industrial loss of use of his right upper extremity?**

¶11. Mueller claims that there was no evidence presented to support the Commission's decision to extend benefits to South beyond his given impairment rating. Mueller claims that the only testimony to support a greater award of disability benefits was South's testimony, which was contradicted by Dr. Marks' testimony. According to Mueller, Dr. Marks released South to work with no limitations. Therefore, Mueller maintains there was no industrial loss of use of his right upper extremity.

¶12. South claims that the full Commission did not err in awarding additional benefits pursuant to applicable law. According to South, he was unable to drive a forklift as his job at Mueller required. South was limited to a ninth-grade education, he had limited job skills, and he continued to have medical problems including pain, swelling, limited wrist flexion, and limited wrist extension after surgery. South also claims that Dr. Marks' testimony was confusing and contradictory. South points out that Dr. Marks stated that South was "much improved since surgery. Still not a hundred percent but to be expected." Dr. Marks also noted that further treatment was available that could reduce South's pain and increase his strength. Finally, Dr. Marks confirmed that South had pain and that the pain was a "valid reason to avoid certain activity." Taking all these facts into account, South claims he suffered an industrial loss to his upper extremity greater than his medical loss, and as a result, the full Commission did not err in awarding benefits above his rating.

¶13. In *McGowan v. Orleans Furniture Inc.*, 586 So. 2d 163, 167 (Miss. 1991), the

6

Mississippi Supreme Court held:

> The Commission is not confined to medical testimony in determining the percentage of loss to be assigned to an injury. *Malone & Hyde of Tupelo, Inc. v. Kent*, 250 Miss. 879, 168 So. 2d 526 (1964). Lay testimony may be considered to supplement medical testimony but "[t]he probative value of any witness' testimony is for the fact-finder to determine." *R.C. Petroleum, Inc. v. Hernandez*, 555 So. 2d 1017, 1021 (Miss. 1990).
>
> Factors which this Court has considered in determining loss of wage earning capacity include the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances. *Malone & Hyde of Tupelo*, 250 Miss. at 882, 168 So. 2d at 527. In other words, the determination should be made only after considering the evidence as a whole. *Piggly Wiggly*, 464 So. 2d [510,] 512 [(Miss. 1985)].

Further, in *Meridian Professional Baseball Club v. Jensen*, 828 So. 2d 740, 747 (¶21) (Miss. 2002), the supreme court held that "where a permanent partial disability renders a worker unable to continue in the position held at the time of injury, we hold that such inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant's ability to earn the same wages which the claimant was receiving at the time of injury." "Under *Jensen*, determining industrial loss is a fact-intensive inquiry, which must be made on a case-by-case basis." *Howard Ind. Inc. v. Robbins*, 176 So. 3d 113, 118 (¶23) (Miss. Ct. App. 2015) (citing *Jensen*, 828 So. 2d at 747 (¶20)).

> "[W]hen the industrial loss is greater than the medical loss, the claimant's industrial or occupational disability or loss of wage-earning capacity controls his degree of disability." [*City of Laurel v. Guy*, 58 So. 3d 1223, 1226] (¶14) [(Miss. Ct. App. 2018)] (citation and internal quotation mark omitted). "[T]here is a presumption of 100% industrial loss when the worker proves he can no longer perform the substantial acts of his usual employment." *Id*. at 1227 (¶16) (internal quotation mark omitted). "Usual employment in this context means the jobs in which the claimant has past experience, jobs requiring similar skills, or jobs for which the worker is otherwise suited by his

age, education, experience, and any other relevant factual criteria." *Id*.

*Bridgeman v. SBC Internet Servs. Inc.*, 270 So. 3d 112, 114-15 (¶6) (Miss. Ct. App. 2018). Considering the facts described in the above paragraphs regarding South's limited education, his inability to perform the tasks required with his former employment, his continuous pain, as well as Dr. Mark's testimony that South's continuous pain would be a "valid reason to avoid certain activity," we cannot find that the Commission's ruling to extend benefits to South beyond his given impairment rating was arbitrary or capricious.

## CONCLUSION

¶14. After reviewing the record, we find no error with the Commission's order granting South temporary total disability benefits at the rate of $477.82 for the period of June 18, 2018, through August 23, 2018, and awarding permanent partial disability benefits at the rate of $477.82 for a total of forty weeks based upon the loss of industrial use of the right upper extremity.

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**