# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-WC-00553-COA

**CHRISTOPHER THOMAS**                                                   **APPELLANT**

**v.**

**NISSAN NORTH AMERICA, INC. AND SAFETY**                  **APPELLEES**
**NATIONAL CASUALTY CORPORATION**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/25/2024 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | MICHAEL P. GORDEN |
| ATTORNEYS FOR APPELLEES: | CANDICE CAROL HARGETT CYNTHIA GOODWIN DENLEY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 05/27/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Christopher Thomas injured his left shoulder while working as a maintenance technician at Nissan North America (Nissan). Thomas had surgery to repair his rotator cuff, was assigned a 5% medical impairment rating to his left arm, and was released to work without restrictions. Thomas filed a petition to controvert with the Workers' Compensation Commission, seeking, inter alia, permanent partial disability (PPD) benefits for his injury. After a hearing, the administrative judge (AJ) found that Thomas was entitled to PPD benefits based on his 5% medical impairment because he had not proved that his injury resulted in an industrial loss of use that exceeded 5%. The full Commission affirmed the AJ's decision. On appeal, Thomas argues that the AJ and the Commission erred by finding

that his injury did not result in an industrial loss of use in excess of his medical impairment. Because substantial evidence supports the Commission's finding, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    In 2013, Thomas began working as a maintenance technician at Nissan in Canton. Thomas testified that maintenance technicians "kind of do everything" and fix whatever "needs to be fixed." On June 6, 2022, Thomas was working on a conveyor. The conveyors are used to move pallets of parts through the plant, and Thomas testified that he and the other maintenance technicians have to keep the pallets moving while troubleshooting a conveyor that is not working. This "generally" requires them to "manually pull pallets across the conveyor if it's down." Thomas testified that pallets can weigh 150 to 225 pounds depending on whether they are empty or loaded. On June 6, 2022, Thomas felt a sharp pain in his left shoulder just as he began to pull a pallet across the conveyor. Thomas stopped working briefly, but the pain "eased up a little bit where [he] could continue to work, although [it was] uncomfortable." Thomas told his supervisor that he thought he had hurt his shoulder, but he "worked the rest of the day." The next day, Thomas was unable to lift his arm, so he went to Nissan's on-site clinic. He was then referred to an outside clinic. After an MRI, Thomas was assigned to a desk job and referred to Dr. Andy Brien at Capital Orthopedics.

¶3.    Thomas's MRI showed "a large massive retracted rotator cuff tear" in his left shoulder. Thomas received an injection for his pain, and Dr. Brien recommended physical therapy. However, Thomas's condition did not improve, and in September 2022, he underwent a left shoulder arthroscopy to repair his rotator cuff. Post-surgery, Thomas was

2

initially restricted to sedentary work, but in January 2023, Brien released Thomas to "return to work regular duty," without restrictions. In March 2023, Brien determined that Thomas had reached maximum medical improvement (MMI) and assigned him a 5% impairment rating to his left arm.

¶4.     Thomas returned to his job as a maintenance technician and is able to perform the job, although he testified that he has "to get a little creative in some of the ways" he gets the job "done versus before the surgery." Thomas stated that pre-injury, he was "that guy" that his coworkers called "when they needed help" or needed "some muscle." He stated that post-injury, he is "the one calling for that muscle." Thomas also stated that "working overhead is a challenge" because it is difficult to "keep [his] arm in the air like that for a while." However, he does not "have to do a lot" of overhead work. He also stated that he has to take more frequent breaks when his shoulder "gets weak," and he has learned to use his right arm more than he did before his injury. Thomas testified that Nissan has not made any accommodations for him and that he is still as productive as he was pre-injury, although sometimes "it takes longer." He has not been disciplined for "taking longer" because his supervisors are more concerned about him keeping the machinery "fixed" and "running."

¶5.     Thomas testified that before his injury, he "always called for help" to move pallets because they "are heavy," but while he waited for help, he would do what he could to move the pallets. Since he returned to work, he "won't even attempt to pull" the pallets. Instead, he calls for assistance and continues troubleshooting the conveyor while others pull the pallets. Thomas told his coworkers that he will not pull pallets anymore, and no one has

objected.

¶6. Thomas testified that the conveyor had broken "[m]ore than five times" in the approximately nine months since he had returned to work. Thomas testified that a conveyor "could" break five times in a single week, although he was "not saying" that had actually happened. Thomas testified that a conveyor "may run for three months" without breaking, and then it might break "three times in one day."

¶7. Thomas had received a raise since he returned to work and testified that he was earning more than he did prior to his injury. He had worked less overtime since returning to work but only because there was less overtime available at the plant.

¶8. Thomas testified that his shoulder felt "good" and was "not hurting or sore or anything." He testified that he had not been back to see Dr. Brien, sought any other medical treatment, or taken any medication for his shoulder since Brien placed him at MMI approximately seven months earlier.

¶9. In August 2022, Thomas filed a petition to controvert with the Commission. The case proceeded to an evidentiary hearing before the AJ in October 2023. Nissan had paid all temporary benefits as well as PPD benefits based on Thomas's 5% impairment rating to his left arm. The only issue to be determined at the hearing was whether Thomas's industrial loss of use exceeded his medical impairment rating.

¶10. Following the hearing, the AJ found that Thomas "failed to meet his burden of proof to establish a loss of industrial use in excess of his permanent medical impairment rating of 5%." The AJ noted that Thomas was able to perform his job without accommodations, was

4

released to work full duty with no restrictions, had received no additional medical treatment or medication for his injury, and was earning higher wages than before his injury. The AJ acknowledged Thomas's testimony that "he sometimes has to perform tasks in a different manner than he did pre-injury," but she found that he remained as productive as he had been pre-injury and had not "suffered an occupational deficit." Therefore, the AJ found that Thomas was entitled to ten weeks of PPD benefits based on his 5% impairment rating.[1]

¶11. Thomas filed a petition for review, arguing that the AJ erred by finding that his injury did not result in an industrial loss of use in excess of his 5% medical impairment. The full Commission affirmed the AJ's decision without additional analysis. Thomas then filed a notice of appeal. On appeal, he argues that the Commission erred by finding that his injury did not result in an industrial loss of use in excess of his medical impairment.

**ANALYSIS**

¶12. "The standard of review in workers' compensation cases is limited. The substantial evidence test is used." *Weatherspoon v. Croft Metals Inc.*, 853 So. 2d 776, 778 (¶6) (Miss. 2003). "The . . . Commission is the trier and finder of facts in a compensation claim." *Id.* "The Commission is also the ultimate judge of the credibility of witnesses." *Barber Seafood Inc. v. Smith*, 911 So. 2d 454, 461 (¶27) (Miss. 2005). We will reverse the Commission's decision "only for an error of law or an unsupported finding of fact." *Weatherspoon*, 853 So. 2d at 778 (¶6). "Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the

---

[1] *See* Miss. Code Ann. § 71-3-17(c)(1), (23) (Rev. 2021).

law." *Id.* "The deference granted the Commission by this Court's standard of review means that this Court cannot set aside a Commission's decision that is supported by substantial credible evidence, even if conflicting evidence exists and even if this Court may have found the facts otherwise if it were the trier of facts." *Sheffield v. S.J. Louis Constr. Inc.*, 285 So. 3d 614, 618 (¶8) (Miss. 2019). "In general, we review the decision of the Commission, not the AJ." *Id.* "However, we review the AJ's decision when, as in this case, the Commission summarily affirmed the AJ without additional analysis." *Parker v. Canton Manor*, 373 So. 3d 1036, 1039 n.1 (Miss. Ct. App. 2023).

¶13. This case involves an injury to a scheduled member, Thomas's left arm. In a scheduled-member case, "[t]he law compensates for two types of loss of use: (1) 'functional' or 'medical' and (2) 'industrial' or 'occupational.'" *City of Laurel v. Guy*, 58 So. 3d 1223, 1226 (¶13) (Miss. Ct. App. 2011). "'Industrial' or 'occupational' loss is the functional or medical disability as it affects the claimant's ability to perform the duties of employment." *Id.* (quoting *Meridian Prof'l Baseball Club v. Jensen*, 828 So. 2d 740, 745 (¶11) (Miss. 2002)). "In a scheduled-member case, a worker is always entitled to compensation for the medical or functional loss of [a scheduled member], regardless of whether the functional loss impacts his wage-earning capacity," *id.* at (¶14), or his "ability to work," *Jensen*, 828 So. 2d at 745 (¶13). However, if the worker's industrial loss of use exceeds his medical impairment, he is entitled to compensation for his greater industrial loss of use. *Id.* at 745-46 (¶14). The burden is on the worker to prove that his industrial loss of use exceeds his medical impairment. *Posey v. United Methodist Senior Servs.*, 773 So. 2d 976, 980 (¶11) (Miss. Ct.

App. 2000). Thus, the issue in this case is whether substantial evidence supports the Commission's finding that Thomas failed to meet his burden to prove that his industrial loss of use of his left arm exceeded his 5% medical impairment.

¶14. In scheduled-member cases, the Supreme Court has also held that if an injury prevents the worker from performing the "substantial acts of his usual employment," there is a total or 100% industrial loss of use of the scheduled member. *See Jensen*, 828 So. 2d at 746-50 (¶¶16-27); *Weatherspoon*, 853 So. 2d at 778 (¶10). Here, Thomas argues that he can no longer perform the substantial acts of his usual employment because he no longer pulls pallets. However, the record as a whole belies Thomas's argument. Thomas testified that prior to his injury, other maintenance technicians asked him for "help" or "muscle," but post-injury, he asks his coworkers for help. Thomas also testified that even before his injury, he always asked for assistance pulling pallets because the pallets are heavy. Now, Thomas simply continues troubleshooting issues with the conveyors—trying to get the conveyors running again—while coworkers pull the pallets. Thomas testified that he has told his coworkers that he will no longer pull pallets, and no one has objected. Thomas continues to perform his same job at Nissan, he has not been demoted or suffered any other negative consequence, and he earns more than he did prior to his injury.

¶15. Moreover, Thomas did not show that pulling pallets is a substantial or essential part of his usual employment. Indeed, it is not even clear how often the issue arises. Thomas said that a conveyor could break down multiple times in a day or a week, but he also testified that a conveyor may run for "three months" without issue. In addition, Thomas testified that

7

maintenance technicians "kind of do everything" and fix whatever "needs to be fixed" at the facility. He testified that his supervisors were primarily concerned with his ability to keep the machines "fixed" and "running," not how quickly he completed any particular task. Substantial evidence shows that the substantial acts of Thomas's usual employment involve maintaining and repairing machinery, not pulling pallets.

¶16. In short, substantial evidence shows that Thomas has returned to work without restrictions and continues to perform the substantial acts of his usual employment. Substantial evidence also supports the Commission's finding that Thomas's injury did not result in an industrial loss of use in excess of his medical impairment rating.

## CONCLUSION

¶17. Substantial evidence supports the Commission's finding that Thomas did not meet his burden of proving an industrial loss of use in excess of his medical impairment rating.

¶18. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**